# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHELE WILKINSON, et al., | : | |
| Plaintiffs, | : | Case No. 3:11cv00247 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| GREATER DAYTON REGIONAL TRANSIT AUTHORITY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DECISION, ENTRY, AND ORDER

## I.    Introduction

Plaintiffs are current or former employees of Greater Dayton Regional Transit Authority.  They bring this case asserting violations of their rights under the Family and Medical Leave Act of 1993 (FMLA), as amended, 29 U.S.C §2601, et seq.  Defendants are Greater Dayton Regional Transit Authority and Jean McEntarfer, an employee of Defendant Greater Dayton Regional Transit Authority.[1]

This case is before the Court upon Plaintiffs' Motion to Compel Discovery With the Imposition of Waiver and Memorandum in Support (Doc. #s 27, 28), Defendants' Response in Opposition (Doc. # 40), Plaintiffs' Reply (Doc. #s 43, 46), Defendants' Sur-

---

[1]  Plaintiffs have filed a Motion for Class Certification and Appointment of Class Counsel (Doc. #23), which is pending before U.S. District Judge Walter Herbert Rice.

Reply (Doc. #48), and the record as a whole.

## II. **Background**

Plaintiffs assert in their First Amended Complaint that Defendants violated the

FMLA and FMLA Regulations in numerous ways. They allege that Defendants:

a) Wrongfully and willfully charged the Plaintiffs and other similarly situated GDRTA [Defendant Greater Dayton Regional Transit Authority] employees with violations such as absenteeism and/or misuse of medical leave provided by the FMLA;

b) Wrongfully and willfully harassed the Plaintiffs and other similarly situated GDRTA employees while on intermittent FMLA leave by requiring them to uniformly recertify their FMLA protected intermittent leave when no recertification was justified under the statute;

c) Wrongfully and willfully required Plaintiffs and other similarly situated GDRTA employees to obtain second and third opinions without reason to doubt the validity of the medical certification, to be evaluated by doctors that were regularly used by defendants, and failed to provide a copy of such opinions within two business days as required under the FMLA, in order to prevent employees from receiving intermittent medical leave, as provided by the FMLA;

d) Wrongfully and willfully imposing higher certification and notification requirements than permitted under the FMLA by uniformly finding sufficient medical certifications to be insufficient and not accepting employees' notification of foreseeable need for medical leave as required under the FMLA in order to prevent employees from exercising their protected rights under the FMLA;

e) Wrongfully and willfully failed to inform Plaintiffs and other similarly situated GDRTA employees that their reasons for frequent absences should be considered for FMLA certified leave;

f) Wrongfully and willfully harassed Plaintiffs and other similarly situated GDRTA employees because of their absences from work while on FMLA protected medical leave;

g)   Wrongfully and willfully harassed Plaintiffs and other similarly situated GDRTA employees in order to discourage them from use of FMLA protected medical leave;

h)   Wrongfully and willfully took intimidating actions against the Plaintiffs and other similarly situated GDRTA employees after they sought to take FMLA protected medical leave;

i)   Wrongfully and willfully miscalculated the number of hours available under the FMLA for Plaintiffs and other similarly situated GDRTA employees;

j)   Wrongfully and willfully retaliated against Plaintiffs and other similarly situated GDRTA employees by taking adverse employment actions as stated in the previous sections.

(Doc. #21, PageID at 201, ¶3).  Defendants deny these allegations in their Amended

Answer.  (Doc. #22).

Plaintiffs have served Defendants with Interrogatories and Requests for Production

of Documents, seeking, from Plaintiffs' viewpoint, "basic information related to

Defendants' FMLA policies and processes involved in administering employee requests

for FMLA leave."  (Doc. #28, PageID at 548).  Plaintiffs contend that their discovery

requests "are limited and narrowly focused to the issues . . . ."  (Doc. #28, PageID at 549).

Plaintiffs describe Defendants' responses as raising "a litany of objections . . .

thus making it patently obvious that the objections are intended to deter and impede the

truthseeking process contemplated under the federal discovery rules."  *Id*.  Plaintiffs seek

an Order overruling Defendants' objections and compelling Defendants to provide full

and complete responses to Plaintiffs' discovery requests.

Defendants point out that Plaintiffs "ignore Defendants' agreement to provide

FMLA files for nearly all GDRTA's employees, as part of a document production totaling over 150,000 pages, not to mention their agreement to conduct an elaborate search of GDRTA's electronically stored information."  (Doc. #40, PageID at 754).  Defendants contend that their objections are proper and that Plaintiffs' Motion to Compel is meritless.

## III.  Discussion

### A.    Number of Interrogatories

Rule 33(a)(1) states:

> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).

Although Plaintiffs agreed in the parties' Rule 26(f) report to limit the number of their "comprehensive interrogatories" to 15 (Doc. #14, PageID at 144; Doc. #15, PageID at 155), the Court did not specifically impose this limit upon Plaintiffs in the Amended Preliminary Pretrial Conference Order.  *See* Doc. #17.  For this reason, Rule 33(a)(1) allows Plaintiffs to serve "no more than 25 interrogatories" upon Defendants.  As a result, Defendants' numerical objection – i.e., "Plaintiffs have exceeded fifteen (15) collective Interrogatories" – is overruled, and Plaintiffs are permitted to serve 25 interrogatories.

The more troublesome problem for Plaintiffs is Defendants' contention that Plaintiffs have served far more than 25 interrogatories when the many discrete interrogatory subparts are counted.  By Defendants' count, counting each subpart separately, Plaintiffs have served 40 interrogatories.

4

To counter this problem, Plaintiffs argue that Defendants have waived their supernumerary objection by answering over it.  The cases Plaintiffs cite in support of this contention are not controlling upon this Court and are unconvincing.  For example, *Meese v. Eaton Mfg*., 35 F.R.D. 162, 166 (N.D. Ohio 1964) contains no analysis or caselaw supporting its conclusion that the responding party waived its numerical objection by answering over it.  35 F.R.D. at 166.  This same is true of *Allavherdi v. Regents of University of New Mexico*, 228 F.R.D. 696, 698 (D.N.M. 2005).  More significantly, neither *Meese* nor *Allavherdi* nor the other cases Plaintiffs cite recognize the following mandate in the current version of Rule 33:  "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  The plain meaning of this Rule permits a party to raise an objection, then answer the interrogatory without waiving the objection.  *See Schipper v. BNSF Ry.Co*., 2008 WL 2358748 (D. Kan. June 6, 2008)("*Meese* . . . is no longer good law. . . .  [A] party may assert an objection and still respond to the interrogatory.").  Plaintiffs' waiver argument therefore lacks merit.

Plaintiffs argue that Defendants have failed to demonstrate that each subpart should be counted as a single interrogatory under the "related question" test.  Yet applying the "related question" test does not rescue Plaintiffs from their numerical problem.

The task of counting a party's "interrogatories, including all discrete subparts," under Rule 33(a)(1), is guided by straightforward  inquiry:  "While the term 'discrete

subparts' does not have a precise meaning, courts generally agree that interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'"  *State Farm Mut., Auto. Ins. Co. v. Pain & Injury Rehab. Clinic, Inc.,* 2008 WL 2605206 at *2 (E.D. Mich., June 30, 2008) (quoting *Trevino v. ACB Am., Inc.,* 232 F.R.D. 612, 614 (N.D. Cal. 2006)).  "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question.  Or, can the subsequent question stand alone?  Is it independent of the first question?  Genuine subparts should not be counted as separate interrogatories.  However, discrete or separate questions should be counted as separate interrogatories, notwithstanding they are joined by a conjunctive word and may be related."  *Kendall v. GES Exposition Services, Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).  "[O]nce a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it, the subpart must be considered a separate interrogatory no matter how it is designated."  *Waterbury v. Scribner*, 2008 WL 2018432 at *2 (E.D. Cal. 2008) (quoting *Willingham v. Ashcroft,* 226 F.R.D. 57, 59 (D.D.C. 2005)).

 Plaintiffs label their first interrogatory as 1(a) through 1(i).  Each of these interrogatories begins with a polite request:  "Please provide the following information in detail, regarding the policies, procedures, or practices that GDRTA employees must follow in applying for leave under the FMLA."  (Doc. #27, Page ID at 463-68).  The

lettered components of Plaintiffs' interrogatory 1 ask for information about the following:

a.    The manner in which employees are informed of GDRTA's FMLA policies;

b.    How long these policies and procedures have been in effect;

c.    Procedures used by you when you receive a request from a GDRTA employee for FMLA leave;

d.    Length of time it takes for a GDRTA employee to receive an FMLA packet after they request it from you;

e.    Method used to verify when GDRTA employees receive an FMLA packet for the purpose of calculating their deadlines for submitting the FMLA application and the FMLA medical certification, respectively;

f.    Criteria you use in determining whether a medical certification is complete and sufficient;

g.    In cases where you find a medical certification to be incomplete and/or insufficient, whether the employee is notified as to what information their health care provider must provide;

h.    The average length of time it takes GDRTA Human Resources to approve or deny an application for FMLA leave from the time an employee submits all the required documentation;

i.    In the case where the approval or denial of an application for FMLA is delayed, state the average length of such delay and factors that would or could have caused it.

*Id.* Each of these subparts constitutes a separate inquiry, seeking distinct information;

each stands alone; each can be answered without referring to the prior (or other) subparts.

Although Plaintiffs gather their subparts under the same polite preamble and number 1 by

seeking information about Defendants' policies, procedures, or practices, each subpart

introduces a new line of inquiry about those policies, procedures, or practices.  To answer

each subpart, Defendants would not gain any useful information from any other subpart and do not need to refer to any other subpart. Consequently, under the standards set forth above, as gleaned from *Kendall*, 174 F.R.D. at 685-86; *State Farm,* 2008 WL 2605206 at *2; *Waterbury*, 2008 WL 2018432 at *2; *Willingham,* 226 F.R.D. at 59, each subpart of Plaintiffs' interrogatory 1 must be counted separately under Rule 33(a)(1).

Quoting Plaintiffs' remaining interrogatories and subparts would serve no useful purpose. The undersigned has reviewed each and finds that the analysis and conclusions set forth in the prior paragraphs applies to Plaintiffs' interrogatories 2, 3, 4 and their respective subparts. Plaintiffs begin interrogatory 2(a)-2(e) with the same preamble, and each subpart introduces a new line of inquiry. Each subpart contains a separate inquiry, seeking distinct information; each stands alone; each can be answered without referring to the prior or other subparts. The same is true of interrogatory 3(a)-3(e) and 4(a)-4(f).

Counting Plaintiffs' interrogatories and subparts in the above manner, interrogatory 4(f) is Plaintiffs' 25th interrogatory. Because Rule 33(a)(1) precludes Plaintiffs from serving more than 25 interrogatories, including subparts, Defendants' numerical objections are well taken as to Plaintiffs' interrogatories 4(g)-15, including each subpart.

### B.     Discovery and Relevance

#### 1.
#### Main Arguments

Defendants object to many of Plaintiffs' discovery requests on the ground that they

seek information "not relevant and not reasonably calculated to lead to the discovery of admissible evidence."  Plaintiffs contend that this objection must be overruled as to interrogatories 4, 5, 7-31, 34, 39, and 40, and to document requests 8, 10, 11, 15, 26, 28-30, 37, 39, 40, 45, 47, and 50-53 (using Defendants' counting method).[2]

## 2.
## Applicable Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure generally permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to [the] party's claim or defense."  *See Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see Craig-Wood v. Time Warner N.Y. Cable LLC*, 2012 WL 1288753 at *2 (S.D. Ohio, Apr. 16, 2012)(Kemp, M.J.).  When good cause exists, the district court has the discretion to permit a party to seek "discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).

"Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'"

---

[2]  Plaintiffs reference to these interrogatories acknowledges Defendants' method of numbering each interrogatory subpart as a separate interrogatory.  The specific discovery request at issue becomes clear upon examination of the chart prepared by Defendants in response to Plaintiff's First Set of Interrogatories.  Plaintiffs' interrogatory 1(d) becomes interrogatory 4, interrogatory 1(e) becomes interrogatory 5, etc., when each interrogatory subpart is counted separately.  *See* Doc. #27, PageID at 520-34.

*Surles*, 474 F.3d 288, 305 (6th Cir. 2007) (citation omitted); *cf. United States v.*

*$463,497.72 in U.S. Currency*, 779 F. Supp. 2d 696, 713 (E.D. Mich. 2011) ("The scope

of discovery under the Federal Rules of Civil Procedure is 'quite broad.'" (quoting, in

part, *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998)); *Tolstith v. L.G.*

*Electronics, USA, Inc*., 2009 WL 439564 at *3 (S.D. Ohio 2009) (King, M.J.) ("These

discovery provisions are to be liberally construed.").

> The party seeking discovery bears the initial burden of showing that
> the information sought is relevant. *Momah v. Albert Einstein Med. Ctr.,*
> 164 F.R.D. 412, 417 (E.D. Pa.1996). Thereafter, the party resisting
> production bears the burden of persuasion. *See Josephs v. Harris Corp.,*
> 677 F.2d 985, 992 (3d Cir. 1982). The resisting party must show
> specifically how the information requested is not relevant or why it should
> be limited.

*Hughes v. Guanciale*, 2006 WL 689114 at *1 (S.D. Ohio Mar. 17, 2006) (Black, M.J.;

*see Marfork Coal Co., Inc. v. Smith*, 274 F.R.D. 193, 204 (S.D.W. Va. 2011) ("When

requested information appears relevant, the party objecting to providing it must

demonstrate that the information has no bearing upon a claim or defense of any party or

circumstances contemplated by Rule 26(b)(2)(C) exist.").

Defendants contend that Plaintiffs incorrectly rely on pre-2000 case law "that

permitted broader discovery 'relevant to any party's claim or defense.' . . . However,

under the current rule, a party is limited to discovery relevant to the *actual claims or*

*defenses in the case*, and may not go beyond that to delve in to the general 'subject

matter' of the lawsuit without first obtaining a court order." (Doc. #40, PageID at 762

(Defendants' italics)).

Plaintiffs contend that they seek information "strik[ing] straight to the heart of the issues of Plaintiffs' interference/retaliation claims, and to Defendants' defenses."  (Doc. #28, PageID at 557).  Plaintiffs further argue, "The information sought . . . is relevant because it will show how Defendants' policies, patterns, act practices interfered with Plaintiffs' exercise or attempt to exercise their rights under the FMLA, and how Defendants retaliated against various Plaintiffs for doing so."  *Id*.

The Court will review each challenged interrogatory to determine if it seeks information relevant to Plaintiffs' FMLA claims – specifically, considering the interrogatory seeks information relevant to "how Defendants' policies, patterns, act practices interfered with Plaintiffs' exercise or attempt to exercise their rights under the FMLA, and how Defendants retaliated against various Plaintiffs for doing so."  (Doc. #28, PageID at 557).  And the Court will review the merits of Defendants' answers and relevancy objections.  In doing so, Defendants' responses and objections fall into one of three groups:

Group 1:    Defendants' relevancy objections lack merit, but Defendants have otherwise provided sufficient interrogatory answers;

Group 2:    Defendants' relevancy objections lack merit and their interrogatory answers are insufficient; and

Group 3:    Defendants' relevancy objections lack merit but Defendants have otherwise provided sufficiently specific reference to documents as permitted by Fed. R. Civ. P. 33(d).

11

## Group 1

Group 1 consists of Defendants' answers and objections to interrogatories 1(d),

1(e), and 1(g) fall into Group 1.

Plaintiffs' interrogatory 1(d) states:

> Please provide the following information in detail, regarding the policies, procedures or practices that GDRTA employees must follow in applying for leave under the FMLA:
>
> d.      Length of time it takes for a GDRTA employee to receive an FMLA packet after they request it from you[.]

(Doc. #27, PageID at 464).

Defendants base their relevancy objection on the contention that "no Plaintiff has

asserted a claim based on the length of time to receive an FMLA packet."  (Doc. #27,

PageID at 465).  This objection views relevancy under Rule 26(b)(1) too narrowly

because the interrogatory seeks to learn if Defendants engaged in a policy, pattern, or

practice of interfering with FMLA rights by delaying responses to FMLA requests.

Defendants' relevancy objection therefore lacks merit as to interrogatory 1(d).

However, Defendants need not supplement their interrogatory 1d answer because

the additional information they provide in their answer is sufficient to meet their

discovery obligations under Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the

extent it is not objected to, be answered separately and fully . . . .").  Defendants's

interrogatory answer states:

> The length of time it takes for a GDRTA employee to receive FMLA application paperwork after they request FMLA leave depends on the

individual facts and circumstances of the request.  The GDRTA generally mails FMLA documents as soon as practicable to employees who request FMLA leave.  When employees request FMLA leave in person, on some occasions, the GDRTA may immediately provide them with FMLA documents by hand delivery.  Further, [t]he GDRTA's FMLA Policy (attached as Exhibit B to Defendants' Answer) provides additional information regarding the procedures the GDRTA follows after receiving an employee's request for FMLA.

(Doc. #27, PageID at 465).  This constitutes the separate and full answer required by Fed.

R. Civ. P. 33(b)(3).

Plaintiffs' interrogatory 1(e) states:

Please provide the following information in detail, regarding the policies, procedures or practices that GDRTA employees must follow in applying for leave under the FMLA:

e.     Method used to verify when GDRTA employees receive an FMLA packet for the purpose of calculating their deadlines for submitting FMLA application and the FMLA medical certification, respectively[.]

(Doc. #27, PageID at 465).

Defendants base their relevancy objection on the contention that "no Plaintiff has

asserted a claim based on the method used to verify when GDRTA receive an FMLA

packet."  (Doc. #27, PageID at 465).  Defendants' relevancy objection lacks merit

because they view relevancy under Rule 26(b)(1) too narrowly.  Plaintiffs' interrogatory

1(e) seeks to learn if Defendants have engaged in a policy, pattern, or practice of

interfering with FMLA rights by improperly calculating an FMLA-seeking employee's

deadline for submitting an FMLA application and medical certification.  It thus seeks

information relevant to its FMLA claims or is reasonably calculated to lead to the

discovery of admissible evidence.

However, Defendants need not supplement their interrogatory 1(e) answer because the additional information they provide in their answer is sufficient to meet their discovery obligations under Fed. R. Civ. P. 33(b)(3).  Defendants state:

> Defendants state that the GDRTA's methods for calculating a deadline for employees to return a medical certification depend upon the individual facts and circumstances.  The GDRTA generally ensures that employees receive at least fifteen days to submit medical certification from their health care providers.  If the medical certification is sent by mail, the GDRTA provides the employee with more time to return the certification to account for mailing time, including additional days for holidays, Sundays, or any other days when the post office is closed.  The GDRTA's FMLA Policy (attached as Exhibit B to Defendants' Anwer) provides additional information regarding the procedures the GDRTA follows after receiving an employee's request for FMLA.

(Doc. #27, PageID at 465-66).  This constitutes the separate and full answer required by Fed. R. Civ. P. 33(b)(3).

Next, Plaintiffs' interrogatory 1(g) states:

> Please provide the following information in detail, regarding the policies, procedures or practices that GDRTA employees must follow in applying for leave under the FMLA:
>
> g.      In cases where you find a medical certification to be incomplete and/or insufficient, whether the employee is notified as to what information their health care provider must provide[.]

(Doc. #27, PageID at 466).  Defendants object on relevancy grounds, asserting that this interrogatory "seeks information about policies, procedures, or practices not alleged by Plaintiffs to be unlawful."  *Id*., PageID at 467.  Defendants' relevancy objection lacks merit because they view relevancy under Rule 26(b)(1) too narrowly.  Plaintiffs

14

interrogatory 1(g) seeks to learn if Defendants have engaged in a policy, pattern, or practice of interfering with FMLA rights by failing to notify an FMLA-seeking employee that his or her medical certification was incomplete (or insufficient) and what additional information was needed.  Interrogatory 1(g) thus seeks information relevant to Plaintiffs' FMLA claims or is reasonably calculated to lead to the discovery of admissible evidence.

However, Defendants need not supplement their interrogatory 1(g) answer because the additional information they provide in their answer is sufficient to meet their obligations under Fed. R. Civ. P. 33(b)(3).  The additional information consists of the following:

> Defendants state that when GDRTA determines that an employee has submitted an incomplete or insufficient certification, the GDRTA notifies the employee of what additional information is necessary to make the certification complete and sufficient.

(Doc. #27, PageID at 467).  This constitutes the separate and full answer required by Fed. R. Civ. P. 33(b)(3).

## **Group 2**

Group 2 consists of Defendants answers and objections to interrogatories 2(a)-2(e), 3(a)-3(e), 4(c)-4(f).  Defendants rely on the same relevancy objection reviewed above in the Group 1discussion, contending that Plaintiffs have not raised a claim related to the specific information sought in the interrogatory.  As with Group 1, Defendants' relevancy objection in Group 2 views too narrowly the concept of relevancy under Rule 26(b)(1).

Plaintiffs' interrogatories 2(a)-2(e), 3(a)-3(e), 4(c)-4(f) each seeks information that

is either relevant to Plaintiffs' FMLA claims or the interrogatory is reasonably calculated to lead to the discovery of admissible evidence concerning whether Defendants have engaged in a policy, pattern, or practice of interfering with Plaintiffs' FMLA rights. *See* Doc. #27, PageID at 468-79.  In addition, Defendants' answers to these interrogatories fail to provide separate and full responses to the interrogatories as Rule 33(b) mandates.

Accordingly, Defendants' relevancy objection to Plaintiffs' interrogatories 2(a)-2(e), 3(a)-3(e), 4(c)-4(f) is overruled.

## **Group 3**

Group 3 consists of Defendants' answers and objections to interrogatories 1h, 1(i), 4(a), and 4(b).  Defendants' relevancy objections to those interrogatories lack merit but Defendants have otherwise provided sufficiently specific reference to documents as permitted by Fed. R. Civ. P. 33(d).

Plaintiffs' interrogatories state:

1.  Please provide the following information in detail, regarding the policies, procedures, or practices that GDRTA employees must follow in applying for leave under the FMLA:

h.  The average length of time it takes GDRTA Human Resources to approve or deny an application for FMLA leave from the time an employee submits all the required documentation;

* * *

i.  In the case where the approval or denial of an application for FMLA leave is delayed, state the average length of delay and factors that would or could have caused it[.]

(Doc. #27, PageID at 467-68).

4.     For the period January 1, 2006 to the present, provide the following information:

a.     Identify the individuals who requested FMLA leave and were granted FMLA leave, and for each individual state:  (a) the date FMLA leave was requested; (b) the medical condition for which the leave was requested; (c) the duration of the leave requested; (d) the date the leave was granted or approved; and (e) the duration of the leave granted or approved.

b.     Identify the individuals who requested FMLA leave but were denied FMLA leave, and for each individual state:  (a) the date FMLA leave was requested; (b) the medical condition for which the leave was requested; (c) the duration of the leave requested; (d) the date the leave was granted or approved; and (e) the duration of the leave granted or approved.

(Doc. #27, PageID at 475-76).

In their objections to these interrogatories, Defendants too narrowly view relevancy under Rule 26(b)(1).  Each of these interrogatories seek information discoverable under Rule 26(b)(1) because each seeks information relevant to Plaintiffs' FMLA claims or because each is reasonably calculated to lead to the discovery of admissible evidence.  Defendants' relevancy objections to these interrogatories are therefore overruled.

Defendants might yet be saved from providing further responses to these interrogatories – 1(h), 1(i), 4(a), and 4(b) – due to their reliance on Fed. R. Civ. P. 33(d). They assert in their answers to these interrogatories:

[P]ursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Defendants state that additional information responsive to this Interrogatory may be derived or ascertained from the FMLA files of individual employees and the burden of deriving or ascertaining the answer is substantially the same for Plaintiffs as for Defendants. . . .

17

(Doc. #27, PageID at 467-68).

Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records..., and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1)    specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2)    giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Plaintiffs contend that Defendants have failed to trigger Rule 33(d) because they have failed to specify the documents upon which they rely in their interrogatory answers. Plaintiffs maintain that simply referring to FMLA files is not enough, especially when Defendants refer Plaintiffs to hundreds of unspecified files and 200,000 pages of documents.

Defendants disagree, explaining:

> Defendants maintain FMLA files on each employee who requests FMLA leave (e.g., requests for leave, approval/denials, calculation of time, medical certificates, etc.).  As Plaintiffs requested GDRTA to produce "FMLA files" . . . , it is reasonable to conclude that Plaintiffs know what the files are and what they may contain, and Plaintiffs already intend to review those files.  The information Plaintiffs seek, such as "[t]he average length of time it takes GDRTA Human Resources to approve or deny an application for FMLA leave from the time an employee submits all the required documentation[,] (Interrogatory No. 8), is not available to GDRTA without individually sifting through each employee's FMLA file and making detailed calculations.  This information could just as easily be

derived or ascertained by Plaintiffs reviewing those files as by GDRTA.
(Doc. #40, PageID at 771). Defendants' contentions are well taken due in large part to the fact that Plaintiffs seek to bring this case as a class action and have crafted their interrogatories broadly, designing them to obtain information that is available in the tens of thousands, perhaps more than 200,000, pages of documents that Defendants will produce. For instance, where else will information Plaintiffs seek to learn – such as,"[t]he average length of time it takes GDRTA Human Resources to approve or deny an application for FMLA leave from the time an employee submits all the required documentation" – be found? Because of this, the interrogatories themselves, and thus Plaintiffs, create the need for someone to review a gigantic number of documents. And, the facts and circumstances presently in the record reveal no indication that Defendants are attempting to hide information or evade sufficiently answering these interrogatories by invoking Rule 33(d). *Cf. United States v. Rachel*, 289 F.Supp.2d 688, 693 (D.Md. 2003)(Defendants appropriately relied on Rule 33(d) due to Plaintiffs' "extremely broadly worded" interrogatories).

Defendants, moreover, are not attempting to improperly engage in a "wholesale dumping of documents," as case law generally forbids. *See, e.g., Bayview Loan Servicing, LLC v. Boland*, 259 F.R.D. 516, 519 (D. Colo. 2009); *see Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514-15 (W.D. Ky. 2010). They are instead referring Plaintiffs to the documents – FMLA files, although many – containing the information Plaintiffs seek in interrogatories 1(h)-(i), and 4(a)-(b). Locating this information in the

19

FMLA files will not require Plaintiffs to have specialized knowledge or arcane information that they do not possess (as can occur in cases requiring accounting documents, patent documents, or high-level financial bank). Plaintiffs' counsels' doubtless expertise in FMLA litigation will enable them to locate and identify the information they seek in the FMLA files "as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).

The sole exception to this appears in interrogatory 1(i), where Plaintiffs ask Defendants to state the "factors that would or could have caused" a delay in approval or denial of an application for FMLA leave. It is reasonable to infer that Defendants know what factors would or could cause such delays without reviewing the FMLA files Defendants should be able to answer this part of interrogatory 1(i) without referring Plaintiffs to the FMLA files. Consequently, Defendants' reliance on Rule 33(d) is misplaced, and they must supplement their answer to this aspect of interrogatory 1(i).

Plaintiffs also argue that Defendants have evaded their duty to provide full discovery responses to Plaintiffs' interrogatories and requests for production of documents by unilaterally and selectively limiting their responses. This contention lacks merit to the extent Defendants' have properly relied on Rule 33(d). This contention otherwise lacks merit in light of Defendants' reasonable explanation that they "only keep information in so many places. For example, all paper documents relating to an employee's FMLA leave will be in the employee's FMLA file. All paper documents regarding a grievance filed over the administration of an employee's FMLA leave will be

in a grievance file.  There may also be electronic documents regarding an employee's

FMLA leave, or an FMLA-related grievance, on GDRTA's e-mail servers.  Defendants

have agreed to make FMLA and grievance paper files available for inspection, and to

conduct a search of GDRTA's electronic records using Boolean search terms agreed by

the parties."  (Doc. #40, PageID at 764).

Accordingly, Defendants have properly invoked Rule 33(d) as to Plaintiffs'

interrogatories 1(h), 1(i), 4(a), and 4(b) – except as to the "factors" question in

interrogatory 1(i).


### C.    <u>Timeframe</u>

Plaintiffs argue that Defendants improperly limit the timeframe of certain

discovery requests to the period starting on July 20, 2008, rather than properly responding

by directing their responses to the requested time period, beginning on January 1, 2006.

Defendants contend that they have properly limited the timeframe of their

discovery responses to the time period beginning July 20, 2008 – "the longest possible

time frame during which valid FMLA claims could possibly exist, i.e., three years prior to

the filing of the Complaint, which is the same as the alleged 'class period,' and which is

one year beyond the statute of limitations for normal, non-'willful' FMLA claims."  (Doc.

#40, PageID at 763).

Generally, "it is proper to deny discovery of matter that is relevant only to claims

or defenses that have been stricken, or to events that occurred before an applicable

21

limitations period, unless the information sought is otherwise relevant to issues in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (footnote omitted). "With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period." *Johnson v. Kraft Foods N. Am., Inc*., 238 F.R.D. 648, 652 (D. Kan. 2006).

In the present case, Plaintiffs allege, "For several years prior to 2009, Plaintiff Michele Wilkinson was approved for and use FMLA leave without issue." (Doc. #21, PageID at 204). Things allegedly changed in 2009, according to Plaintiffs, when GDRTA denied Wilkinson's properly submitted applications for FMLA leave in violation of her rights under the FMLA. *Id*, PageID at 204-06. In support of their class action claims, Plaintiffs allege, in part, "At all material times, GDRTA has had policies in place or has been engaged in practices that emanate from a common plan or scheme uniformly applicable to all 'eligible employees who applied for FMLA leave that interferes with employees' FMLA rights . . . ." *Id*., PageID at 217.

Plaintiffs' discovery requests for information from January 1, 2006 forward seek evidence to support their theory that Defendants' policies, patterns, and practices have changed – became more stringent and conflicted with the FMLA – after they instituted a new FMLA policy designed to reduce the time Plaintiffs (and other employees) take for medical leave. Under the new policy, according to Plaintiffs, Defendants would routinely

find medical certification incomplete or insufficient or would routinely require employees to submit a second or third medical opinion before their policy, pattern, or practices. Plaintiffs' discovery requests for information from and after January 1, 2006 shed light on, or are reasonably calculated to shed light on, whether or not Defendants' enacted such a policy, pattern, or practice; and, if they did, whether the new policy, pattern, or practice was more stringent than its prior policy, patter, or practice.  Consequently, Plaintiffs' discovery requests for information from and after January 1, 2006 seek information relevant to their FMLA claims or are reasonably calculated to lead to the discovery of admissible evidence to support their factual and legal theories.  Although this includes facts and circumstances before the FMLA statute of limitations may have begun to run in July 2008, and although Plaintiffs may be time barred from bringing FMLA claims based on particular violations that occurred before July 2008, Plaintiffs have established that they information they seek about Defendants' change in FMLA policy at some point after January 1, 2006 is discoverable under Rule 26(b)(1).  *See Oppenheimer Fund*, 437 U.S. at 352 (permitting discovery of pre-statute of limitations information when it is "otherwise relevant to issues in the case."); *cf. Johnson*, 238 F.R.D. at 652 ("With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period.").

Accordingly, Defendants' limitation of their discovery responses to the time period

beginning on July 20, 2008 is improper.

**D.     Additional Matters**

**1.**

Plaintiffs contend that Defendants have waived their objections by answering over them.  This contention lacks merit in light of the plain language of Fed. R. Civ. P. 33(b) and 34(b).  Rule 33 provides, "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3) (emphasis added).  Addressing requests for production of documents, Rule 34 states, with emphasis added, "An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).  In this manner, the plain language of Rules 33(b)(3) and 34(b)(2)(C) permits a party to assert its objections, then answer the discovery request to the extent it does not want to raise an objection.

The cases Plaintiffs rely on are either outside geographic boundary of the Southern District of Ohio or the United States Court of Appeals for the Sixth Circuit and are consequently not binding.  Plaintiffs' cases are likewise not persuasive or involve circumstances distinct from those presently at issue in this case.  For example, *Mann v. Island Resorts Dev., Inc.,* 2009 WL 6409113 at *3 (N.D. Fla., Feb. 27, 2009) is unpersuasive because the district court overlooked or ignored the plain meaning of Rules 33(b)(3) and 34(b)(2)(C), which – as indicated above – permits a party to object to a discovery request, then provide the responsive information or documents.

By responding to Plaintiffs' discovery requests in this manner, Defendants did not

24

waive their objections.

**2.**

Plaintiffs contend that Defendants improperly assert unnecessary and improper boilerplate objections – "General Objections" – at the start of their discovery responses. Plaintiffs characterize these types of general objections as "universally considered improper . . ." (Doc. #28, PageID at 553). And Plaintiffs maintain that Defendants' general objections are especially problematic here because each specific discovery response incorporates all the general objections.

A review of Defendants' discovery responses does not reveal that Defendants are refusing to disclose discoverable information or documents by relying on its general objections. Instead, Defendants' general objections when read together with their discovery responses indicates a more prosaic approach, one that attempts to avoid a waiver of one or more potentially valid reasons for declining to produce discovery, while otherwise responding to Plaintiffs' discovery requests as permitted by Rules 33 and 34. The circumstances of this case support that conclusion, especially the fact that Defendants are willing to produce "FMLA files for nearly all of the GDRTA's employees, as part of a document production totaling over 150,000 pages, not to mention their agreement to conduct an elaborate search of GDRTA's electronically stored information." (Doc. #40, PageID at 754).

Accordingly, Defendants' assertion of general objections did not constitute, in the present circumstances, an attempt to avoid their duty to produce responsive discovery

information or documents.

**3.**

Plaintiffs argue that Defendants have improperly raised boilerplate objections to specific discovery requests.  Plaintiffs first point to Defendants' "overly broad and/or unduly burdensome" objections to interrogatories 1-14, 16-34, 36, 38-40 and document requests 2, 3, 5, 7-11, 13-24, 26-53.  According to Plaintiffs, Defendants' objections are improper because they fail "to identify the information and documents Defendants do have, or indicate why it is burdensome for Defendants to answer, or indicate the number of documents or the number of pages Defendants claim they would have to produce . . . ." (Doc. #28, PageID at 554).  Plaintiffs similarly contend that Defendants' objection on the ground that the discovery requests are "vague and ambiguous" without more are insufficient.  In this manner, Plaintiffs challenge Defendants' objections to Interrogatories 1-19, 22-25, 30-36, 38, 40 and to document requests 3, 5, 7, 9-12, 16-24, 26-36, 38, 41-43, and 50-53.

Defendants contend that their objections are not improper.  They maintain, "when Defendants have not completely responded because of these objections, [they] have provided an explanation of what was withheld and why."  (Doc. #40, PageID at 761).

"The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."  *Kafele v. Javitch, Block, Eisen & Rathbone*, 2005 WL 5095186 at *2 (S.D. Ohio, Apr. 20, 2005) (Holschuh, D.J.; King, M.J.).  And "[t]he burden of proof is on the

26

objecting party to show in what respect an interrogatory is improper." *Id*. at *1.

Defendants' objections at issue here – overly broad, burdensome, vague and ambiguous – are unsupported by explanation or argument.  Defendants, therefore, have not demonstrated that the objections are well taken and those objections are overruled as to Interrogatories 1(a)-4(f) (interrogatories 1-25) and Requests for Production of Documents 2, 3, 5, 7-12, 13-24, 26-53.  However, Defendants need not supplement these discovery responses – except as otherwise ordered herein – because their responses comply with Fed. R. Civ. P. 33 and 34.

**4.**

Plaintiffs contend that Defendants have failed to meet their burden for the entry of a protective order.  Defendants have responded with a Motion for Protective Order, which the parties have fully briefed.  The Court will issue a separate decision on Defendants' Motion and will issue a protective order resolving the parties' disagreements over such an order.

Plaintiffs raise many additional arguments concerning Defendants' discovery responses.  The above discussion resolves those arguments and, to the extent it does not separately address them, provides a sufficient framework for discovery to move forward.

**IV.**    **Summary**

Defendants' numerical objection to Plaintiffs' interrogatories 3(b) through 4(f) – or, counting them individually, Plaintiffs' interrogatories 16-25 – is overruled.

Defendants' relevancy objection to Plaintiffs' interrogatories 2(a)-2(e), 3(a)-3(e),

4(c)-4(f) is overruled. Defendants shall provide Plaintiffs with their supplemental answers to these interrogatories.

Defendants' numerical objection to Plaintiffs' interrogatories 4(g) through 15, including each subpart – or, counting them individually, Plaintiffs' interrogatories 26-40 – is sustained.

Defendants' reliance on Rule 33(d) is well taken as to Plaintiffs' interrogatories 1(h), 1(i), 4(a), and 4(b) – except as to the "factors" question in interrogatory 1(i). Defendants shall provide Plaintiffs with their supplemental answer to the "factors" question in interrogatory 1(i).

Defendants' limitation of their discovery responses to the time period beginning on July 20, 2008 is overruled. Defendants shall provide Plaintiffs with their supplemental discovery responses to Plaintiffs' interrogatories 4(a)-4(e) and requests for production of documents 1-4, 7, 8, 11, 14, 15, 28-30, 35, 37-53 by responding with information and documents concerning the time frame beginning on January 1, 2006.

## IT IS THEREFORE ORDERED THAT:

1.  Plaintiffs' Motion to Compel Discovery With the Imposition of Waiver and Memorandum in Support (Doc. #27) is GRANTED, in part, as set forth herein; **on or before August 31, 2012**, Defendants shall submit to Plaintiffs their supplemental discovery responses required by this Decision, Entry, and Order; and

2.     Plaintiffs' Motion to Compel Discovery With the Imposition of Waiver and
       Memorandum in Support (Doc. #27) is otherwise DENIED.


August 14, 2012                          _____s/ Sharon L. Ovington_____
                                              Sharon L. Ovington
                                         United States Magistrate Judge