## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHELE WILKINSON, *et al.*,　　　:

　　　Plaintiffs,　　　　　　　:　　Case No. 3:11cv00247

　v.　　　　　　　　　　　:　　District Judge Walter Herbert Rice
　　　　　　　　　　　　　　　　Magistrate Judge Sharon L. Ovington

GREATER DAYTON REGIONAL　:
TRANSIT AUTHORITY, *et al.*,

　　　　　　　　　　　　　:

　　　Defendants.

　　　　　　　　　　　　　:

---

## REPORT AND RECOMMENDATIONS[2]

---

## I.　　Introduction

　　　Plaintiffs Michele Wilkinson, Della Aydelott, Shalonda Egler, Brian Gray, Rob Phillips, Doug Stauter, Alicia Washington, Rocquel Mitchell are current employees or former employees of Greater Dayton Regional Transit Authority (GDRTA).  They bring this case against Defendant GDRTA and Defendant Jean McEntarfer claiming violations of the Family Medical Leave Act of 1993 (FMLA), as amended, 29 U.S.C. §2601, et seq.  Plaintiffs also seek to bring this case a class

---

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

action, and their First Amended Complaint contains a separate discussion of their class-action claims.  (Doc. #21, PageID at 215-18).

The case is before the court on Defendants' Motion for Judgment on the Pleadings (Doc. # 24), Plaintiffs' Memorandum in Opposition (Doc. #31), Defendants' Reply (Doc. # 35), and the record as a whole.

## II.    The FMLA And Plaintiffs' Main Claims

"The FMLA permits qualifying employees to take twelve weeks of unpaid leave each year if, among other things, the employee suffers from a 'serious health condition that makes [her] unable to perform the functions of [her] position[.]'" *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 578 (6th Cir. 2007) (quoting, in part, 29 U.S.C. § 2612(a)(1)(D) (brackets in *Novak*).  Under the FMLA, it is "'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act].'"  *Novak*, 503 F.3d at 577 (quoting 29 U.S.C. § 2615(a)(1)).

Plaintiffs claim that Defendants have violated, and for some Plaintiffs, continue to violate, their FMLA rights in two ways:  first, by interfering with their entitlement to medical leave or family leave; and second, by retaliating against them for exercising their rights under the FMLA.

**III.    Defendants' Motion For Judgment
          On The Pleadings And Applicable Standards**

Defendants contend that they are entitled to judgment on the pleadings under

Fed. R. Civ. P. 12(c) mainly because they acted as the FMLA permits, because

they did not retaliate against Plaintiffs for exercising their rights under the FMLA,

and because Defendant McEntarfer cannot be held individually liable under the

FMLA.

The pleadings requirements and standards outlined in *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S.

662, 129 S.Ct. 1937 (2009) apply to the task of resolving motions for judgment on

the pleadings Fed. R. Civ. P. 12(c).  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608,

611 (6th Cir. 2012); *see Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th

Cir. 2010).  The Court "construes the complaint in a light most favorable to the

plaintiff, accepts all factual allegations as true, and determines whether the

complaint states a plausible claim for relief."  *HDC, LLC*, 675 F.3d at 611

(citations omitted).

A complaint's factual allegations "need to be sufficient to give notice to the

defendant as to what claims are alleged, and the plaintiff must plead 'sufficient

factual matter' to render the legal claim plausible, i.e., more than merely

possible....  However, 'a legal conclusion couched as a factual allegation' need not

be accepted as true on a motion to dismiss [or a Rule 12(c) motion], nor are recitations of the elements of a cause of action sufficient." *Fritz*, 592 F.3d at 722 (quoting, in part, *Iqbal*, 556 U.S. at 678-79 (other citations omitted). "In keeping with these principles a court considering a motion to dismiss [or a Rule 12(c) motion] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. And, "[a]ccording to the Supreme Court, 'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting, in part, *Iqbal,* 556 U.S. at 678). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys*, 684 F.3d at 610.

## IV. Discussion

### A. Factual Sufficiency and Plausibility

#### 1.

To state an FMLA interference claim, "a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a

covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled." *Novak*, 503 F.3d at 577-78 (citations omitted); *see Wysong v. Dow Chemicals*, 503 F.3d 441, 447 (6th Cir. 2012). The parties' present dispute focuses mainly on the fifth element of an FMLA-interference claim.

Defendants argue that Plaintiffs' factual allegations, when accepted as true, fail to show that GDRTA did anything to violate the FMLA. Defendants maintain that they acted as permitted by FMLA regulations when they (1) advised Plaintiffs that their medical certifications were incomplete, (2) asked Plaintiffs for additional information, and (3) asked Plaintiffs for second or third opinions and recertifications. Defendants conclude, "Thus, even when construed in Plaintiffs' favor, the alleged facts in the Amended Complaint do not establish that the [GD]RTA interfered with any of the Plaintiffs' rights under the FMLA or retaliated against any of the Plaintiffs for exercising FMLA rights." (Doc. #24, PageID at 386).

**2.**

Plaintiffs structure their Amended Complaint by listing their various theories. They claim, for example, that Defendants:

> Wrongfully and willfully impos[ed] higher certifications and notification requirements than permitted under the FMLA by uniformly finding sufficient medical certifications to be insufficient and not accepting employees' notification of foreseeable need for medical leave as required under the FMLA in order to prevent employees from exercising their protected rights under the FMLA[.]

(Doc. #21, PageID at 201, ¶ 3(d)).

The Amended Complaint then alleges facts concerning each individual Plaintiff, beginning with Michele Wilkinson. Plaintiffs' allegations concerning Wilkinson make at least one of their FMLA-interference theories plausible – namely, their theory that Defendants interfered with Wilkinson's FMLA rights by wrongfully imposing higher medical-certification requirements than the FMLA permits.

Accepting Wilkinson's allegations as true, before 2009 she had taken FMLA leave without any problem obtaining GDRTA's approval. Things began to change in or around January 2009 when Wilkinson "gave GDRTA notice of her continued need for FMLA leave." (Doc. #21, PageID at 204). She provided GDRTA with medical certification sufficient to substantiate her need for FMLA leave due to her own serious health condition. *Id.*, PageID at 205. GDRTA notified Wilkinson that it found her medical certification incomplete. It appears that GDRTA did not approve Wilkinson's request for FMLA leave at this time. *See id.*

Later, in or near December 2009, Wilkinson again gave GDRTA with notice that she needed FMLA leave. One month later she gave GDRTA sufficient

medical certification supporting her need to take FMLA leave. Yet Defendant McEntarfer rejected Wilkinson's medical certification because the health care provider had not addressed whether Wilkinson was referred to other health care providers for evaluation or treatment. Then, on "March 5, 2010, without a reason for doubting the validity of the medical certification, [Defendants] advised Wilkinson that it was requiring her to obtain a second opinion." *Id.* Defendants later required Wilkinson to obtain a third medical opinion, and then denied her request for a brief extension of time to do so even though her physician was out of town. On November 10, 2010, GDRTA refused to accept Wilkinson's sufficient medical certification. And, in the three years following March 2009, GDRTA had yet to approve any of her post-January 2009 FMLA-leave requests. *Id.*

Plaintiffs' allegations describe a series of events, supported by references to reasonably specific dates, that are sufficient to show that GDRTA wrongfully interfered with Wilkinson's requests for FMLA leave after January 2009. "[W]hile an employer remains free to develop and implement medical leave policies, any company policy which is more restrictive than the requirements of the FMLA is not enforceable against the employee*." Harcourt v. Cincinnati Bell Tel. Co.*, 383 F.Supp.2d 944, 953 (S.D. Ohio 2005) (citing *Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 722-23 (6th Cir. 2003)). "The employer may require an employee to provide a doctor's certification confirming the existence of a serious health

condition." *Novak*, 503 F.3d at 578 (29 U.S.C. § 2613(a)). The FMLA (29 U.S.C. §2613) and its applicable Regulation (29 C.F.R. §825.307(a)) "establish that the medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider. The burden is on the employer to establish that the certification is invalid or inauthentic. One of the goals of the FMLA is to allow an employee to obtain needed medical leave in a swift and expeditious manner upon presentation of an adequate certification." *Harcourt*, 383 F.Supp.2d at 955-56; *see Novak*, 503 F.3d at 578. Wilkinson's factual allegations, when accepted as true, are sufficient to trigger – at the pleading stage of this case – the presumption that they provided valid medical certifications to Defendants on or near certain dates. If discovery bears this out, the burden will fall upon Defendants to show that Plaintiffs' medical certifications were invalid or inauthentic – an issue more appropriately resolved at the summary-judgment stage of this case or at trial. *See Harcourt*, 383 F.Supp.2d at 955-56.

Wilkinson alleges that although her initial medical certifications were sufficient to show her need for FMLA leave, Defendants refused to accept her medical certifications or approve her FMLA-leave requests and instead required her to obtain at least additional two medical opinions. In this manner, Defendants allegedly subjected Wilkinson to higher standards than the FMLA permitted.

Plaintiffs' allegations, therefore, suffice to state a plausible FMLA-interference claim.

The remaining Plaintiffs' likewise raise allegations that, when accepted as true, are sufficient to show that Defendants interfered with their lawful attempts to take FMLA leave. Detailed iteration of each Plaintiffs' factual allegations is unnecessary because for each, Plaintiffs have alleged a similar series of events, supported by reasonably specific dates, that vary in detail only. It suffices to say at this stage of the litigation that Plaintiffs have alleged enough facts to show that (1) each Plaintiff notified Defendants of his or her need to take FMLA leave due to a serious health condition; (2) each provided Defendants with sufficient medical certification; (3) Defendants subjected each Plaintiff to higher certification and/or leave standards than permitted by the FMLA; (4) Defendants required some Plaintiffs to obtain one or more additional medical opinions, even though those Plaintiffs had already provided a sufficient medical opinion; and (5) Defendants denied or ultimately failed to approve each Plaintiff's FMLA-supported leave request. Accepting these allegations as true, the Amended Complaint contains enough facts to render Plaintiffs' FMLA interference claim "plausible, i.e., more than merely possible ...." *Fritz*, 592 F.3d at 722; *see Harcourt*, 383 F.Supp.2d at 955-56 ("the medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider.

The burden is on the employer to establish that the certification is invalid or inauthentic."); *cf. Cavin*, 346 F.3d at 720-26 (examining at the summary-judgment stage whether the evidence was sufficient to show the plaintiff adequate notice of his need for FMLA leave).

**3.**

Defendants focus on FMLA Regulations that generally permit employers to take certain actions in response to an employee's medical certification or request for FMLA leave. Defendants describe Plaintiffs' allegations as follows:

- Plaintiffs allege that they or their family members suffered from serious health conditions, and that they provided the [G]DRTA with notice of their need for FMLA leave. (Am. Compl. ¶¶ 23, 38, 51, 65, 76, 97, 111).

- Plaintiffs Wilkinson, Aydelott, Washington, and Mitchell allege that [G]DRTA approved their requests for leave. (Am. Compl. ¶¶21, 38, 102, 125).

- Plaintiffs Wilkinson, Egler, Gray, and Mitchell allege that the [G]DRTA advised them that one of their medical certifications were incomplete or that the [G]DRTA needed additional information. (Am. Compl. ¶¶ 24, 56, 67, 72, 124).

- Plaintiffs Wilkinson, Aydelott, Egler, and Gray allege that the [G]DRTA requested second or third opinions after they submitted medical certifications (Am. Compl. ¶¶ 27, 30, 37, 41, 46, 58, 61, 67, 137).

- Plaintiffs Wilkinson and Gray allege that they [G]DRTA requested recertification of their need for FMLA leave. (Am. Compl.¶¶ 31, 68).

- Plaintiffs Stauter alleges that he was terminated for reaching the maximum amount of chargeable absences permissible under the ACP in June 2010. (Am. Compl. ¶¶ 93, 99).

- Plaintiff Washington alleges that she received chargeable absences under the ACP following her use of FMLA leave. (Am. Compl. ¶ 106)

(Doc. #24, PageID at 385-86). Defendants then argue that accepting these facts as true fails to show that GDRTA did anything to violate Plaintiffs' rights under the FMLA. Defendants reason that FMLA Regulations allowed them (1) to advise Plaintiffs that their certifications were incomplete, (2) to ask Plaintiffs for additional information, (3) to ask Plaintiffs for second or third medical opinions, and (4) to require Plaintiffs to recertify their need for FMLA leave.

The FMLA allows an employer to take one or more of these steps in only limited circumstances. *See Harcourt*, 383 F.Supp.2d at 955-56 ("[T]he medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider. The burden is on the employer to establish that the certification is invalid or inauthentic."). Defendants overlook that Plaintiffs' Amended Complaint, when construed in their favor, contains sufficient allegations to show that each Plaintiff submitted to GDRTA one or more medical certifications that were sufficient to demonstrate their eligibility for, and need to take, FMLA leave. The plausibility of Plaintiffs' FMLA-interference claim arises from their allegations that despite the sufficiency

of their medical certifications, Defendants went beyond what the FMLA and its Regulations permitted by imposing greater medical-certification requirements and by rejecting their sufficient medical certification. Plaintiffs could certainly have pled more factual detail in support of their FMLA interference claims, and doing so might well have advanced the interests of resolving this case in a just, speedy, and efficient manner. Still, their allegations and Amended Complaint contain "a short and plain statement…," Fed. R. Civ. P. 8(a)(2), notifying Defendants of the factual basis of their plausible FMLA-interference claims. "Although *Twombly* and *Iqbal* clarified that a complaint must state a plausible claim – not just a possible claim – [the United States Court of Appeals for the Sixth Circuit] has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading….'" *Rhodes v. R&L Carriers, Inc*., __, Fed.Appx. __, 2012 WL 3156437 at *4 (quoting, *Keys v. Humana, Inc.*, 684 F3d. 605, 609 (6th Cir. 2012) (other citation omitted). Plaintiffs' Amended Complaint contains enough facts and specificity to "nudge[ ] their claims across the line from conceivable to plausible …." *Twombly*, 550 U.S. at 569.

### 4.

Defendants argue that *Tucker v. Middleburg-Legacy Health Place, LLC*, 539 F.3d 545 (6th Cir. 2008) requires dismissal of Plaintiffs' FMLA claims. *Tucker* involved an employee who was terminated after she took approved FMLA leave.

The plaintiff claimed that she was terminated for failing to present her employer with a fitness-for-duty certificate. This was problematic, according to the plaintiff, because her employer had failed to provide her with the written notice – required by FMLA Regulation, 28 C.F.R. §825.301 – detailing her obligations to provide a fitness-for-duty certificate. *Tucker*, 539 F.3d at 547-49. Without such notice, the Regulation precludes an employer from taking "action against an employee .…" *Tucker*, 539 F.3d at 549 (quoting 29 C.F.R. §825.301(f)).

The Sixth Circuit Court of Appeals concluded in *Tucker* that judgment on the pleadings was warranted because the amended complaint failed to contain sufficient allegations to show that the employer either had a policy that required its employees to present a fitness-for-duty certificate before returning from FMLA leave or actually required the plaintiff to provide such a certificate. Without such allegations, 29 C.F.R. §825.301(f) did not apply to the plaintiff's situation and did not prevent the employer from terminating her employment. *Tucker*, 539 F.3d at 551.

The instant case is distinguished from *Tucker* in one main way. Plaintiffs, here, do not raise allegations concerning fitness-for-duty certificates or otherwise raise a claim under 29 U.S.C. §825.301(f). Consequently, the inadequate factual allegations in *Tucker* have no direct correlation with Plaintiffs' sufficient factual

allegations and plausible FMLA claims.  And, unlike the plaintiff in *Tucker*,

Plaintiffs in the instant case have alleged sufficient facts to support their plausible

FMLA-interference claim, as explained previously.  As a result, contrary to

Defendants' contention, *Tucker* does not require dismissal of Plaintiffs' Amended

Complaint.

## 5.

Defendants contend that Plaintiffs' claims of FMLA interference or

retaliation must be dismissed because they do not allege facts showing they

suffered discipline, prejudice, or a materially adverse action.  Defendants argue

that the mere technical infringement of an employee's FMLA rights does not itself

constitute prejudice, and the employer must take some adverse action based on a

technical violation before an FMLA interference claim becomes viable.  These

contentions lack merit.

Plaintiffs have alleged more than mere technical FMLA violations; they

have set forth facts, if true, are sufficient to show that (1) Defendants imposed

higher standards upon Plaintiffs than the FMLA or its Regulations permitted and,

(2) in doing so, they attempted to discourage or chill Plaintiffs from exercising

their FMLA rights.  FMLA Regulations specifically provide, "'Interfering with'

the exercise of an employee's rights would include, for example, not only refusing

to authorize FMLA leave, but discouraging an employee from using such leave."

29 C.F.R. § 825.220(b). Plaintiff Aydelott alleges that although she had taken approved FMLA leave for several years and in October 2010 provided Defendants with proper medical certification of her need for continued FMLA leave, Defendants required her to obtain a second medical opinion without explanation and without paying her out-of-pocket expenses. Plaintiff Aydelott further alleges that she provided Defendants with three physicians' opinions supporting her need to take FMLA leave, but Defendants asked her to obtain another medical opinion without providing an explanation. (Doc. #21, PageID at 206-07). Similarly, Defendants allegedly sought repeated medical opinions without explanation in violation of the FMLA as to other Plaintiffs who had provided sufficient medical certifications, including, for example, Plaintiffs Egler and Grey. *Id.*, PageID at 207-10. In this manner, Plaintiffs have supported their FMLA-interference claims with sufficient allegations to show that Defendants deprived Plaintiffs of leave they were due under the FMLA and to show that Defendants acted so as to discourage Plaintiffs from exercising their right to take FMLA leave when it was medically justified. *See Novak*, 503 F.3d at 577-78 (identifying element 5 of an FMLA-interference claim as "employer denied FMLA benefits to which she was entitled."); *see also Saroli v. Automation & Modular Comp., Inc.*, 405 F.3d 446, 454 (6th Cir. 2004); *Harcourt*, 383 F.Supp.2d at 961-62.

Defendants further maintain that Plaintiffs have failed to allege any adverse action in support of their FMLA-retaliation claim. Defendants emphasize that a "mere inconvenience" or a "bruised ego" is not a materially adverse employment action. (Doc. #24, PageID at 390). Plaintiffs, however, have done enough to show, at this stage of the litigation, that Defendants' misconduct resulted in adverse employment action. Plaintiffs allege that Defendants terminated Plaintiff Stauter's employment for exceeding the number of absences allowed under GDRTA's leave policies even though he sought and was entitled to take FMLA leave. Termination of employment is perhaps the most adverse employment action an employer can take. In addition, Plaintiffs Egler and Mitchell have allegedly suffered financial harm because GDRTA has not reimbursed them for the out-of-pocket expenses they incurred in obtaining additional medical opinions. Defendants have allegedly imposed involuntary FMLA leave on Plaintiff Mitchell, thus causing her to lose pay during those work absences. Given these and other allegations in Plaintiffs' Amended Complaint, they have raised enough factual allegations to show adverse employment action.

## B.    Plaintiff Stauter's Allegations

According to Defendants, Plaintiff Stauter's own allegations show that he cannot state a claim for FMLA interference or retaliation because he admittedly did not request leave until one month after the absences that led to his termination.

Defendants, however, overlook that GDRTA terminated Stauter's employment because of his absenteeism without considering his pending application for FMLA. If that application had been approved, under Plaintiffs' version of the events, it would have covered at least some of the absences in June 2010 that led to Stauter's termination. Plaintiffs' allegations are therefore sufficient to raise plausible claims that Defendants interfered with Stauter's FMLA rights by not considering or granting his request for FMLA leave and retaliated against him because he sought FMLA leave, an inference made reasonable by the allegation that Defendants terminated Stauter's employment at or very near the time he sought FMLA leave.

In order to prevail on an FMLA interference claim, an employee must give her employer notice of her intent to take FMLA leave. *Novak*, 503 F.3d at 577-78. Defendants argue that because the Complaint shows that Plaintiff Stauter did not give timely notice, as is required by the FMLA, his interference claim must be dismissed. However, Plaintiffs' Complaint sets out allegations that, if true, might alleviate Stauter's need to have provided GDRTA with notice. In their Complaint, Plaintiffs allege that "GDRTA requires its employees to incur an absence before employees are allowed to apply for FMLA" leave. (Doc. # 21 at ¶ 85). Assuming, without deciding, that Stauter did not provide timely notice to GDRTA, it is plausible that the above GDRTA policy could have prevented Stauter from giving notice within the period that is normally considered timely under the FMLA.

Therefore, because GDRTA's own policy might have prevented Stauter from giving timely notice, Defendants' contention that Plaintiff Stauter's interference claim must be dismissed is not well taken.

### C.   **Defendant McEntarfer**

A person may be individually liable under the FMLA if he or she meets the FMLA's definition of an "employer." *Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003). Such individual liability can arise because the FMLA defines "employer," in part, as "'any person who acts, directly or indirectly, in the interest of the employer.'" *Mitchell*, 343 F.3d at 827 (citation omitted).

But, "the FMLA's individual liability provision does not extend to public agencies." *Mitchell*, 343 F.3d at 832. The individual defendants in *Mitchell* were employees of the U.S. Postal Service. Because the U.S. Postal Service was within the FMLA's definition of "public agency," the FMLA's individual liability provisions did not expose them to individual liability. *Id*. at 832-33.

Relying on *Mitchell*, and a number of federal cases within the Southern District of Ohio, Defendants argue that Plaintiffs claims against Defendant McEntarfer fail because the FMLA's individual liability provisions do not extend to employees of public agencies, including Defendant McEntarfer.

Plaintiffs contend that Defendant McEntarfer is an employee of a Regional Transit Authority, not a public agency, and she can therefore be held individually

liable under the FMLA.  Plaintiffs point out that the individual defendants in

*Mitchell* were employees of a public agency – the U.S. Postal Service – "clearly a

'public agency' as defined by the FMLA."  In contrast, GDRTA "is not a pure

'public agency' under the Act."   (Doc. #31, PageID at 692).

The issue presented is whether GDRTA is a "public agency" as defined

under the FMLA.  If so, Defendant McEntarfer's status as a GDRTA employee

excludes her from incurring individual liability under the FMLA.  *Mitchell*, 343

F.3d at 832-33.

The FMLA defines "public agency" as follows:

> "Public agency" means the Government of the United States,
> the government of a State or political subdivision thereof; any agency
> of the United States (including that United States Postal Service and
> Postal Rate Commission), a State, or a political subdivision of a State;
> or any interstate governmental agency.

29 U.S.C. §203(x); *see* 29 U.S.C. §2611(4)(A)(iii).

In *Mitchell*, the individual potentially liable under the FMLA was a

supervisor with the defendant United States Postal Service.  Because the

United States Postal Service fell squarely within the definition of "public

agency" under 29 US.C. §203(x), *Mitchell* itself provides no insight into

whether GDRTA is a "public agency" or, in turn, whether a Regional Transit

Authority employee or supervisor like McEntarfer benefits from *Mitchell's*

no-individual-liability rule.  The same is true of many of the cases

Defendants cite because the defendant entities in those cases – e.g., the Ohio Department of Mental Health, the Ohio Department of Rehabilitations and Corrections – fit squarely within the state or state-agency categories of the "public agency" definition.  *See* Doc. #24, PageID at 393 (and cases cited therein); *see also* Doc. #35, PageID at 716-17 (and cases cited therein). And, the FMLA's "public agency" definition, 29 U.S.C. §203(x), does not specifically include or exclude a Regional Transit Authority, like GDRTA.

So, the issue persists:  Is GDRTA a "public agency" within the meaning of the FMLA?  It is obviously not within the federal categories in 29 U.S.C. §203(x):  it is neither the Government of the United States nor an agency of the United States.  Yet, it might be a political subdivision of the State of Ohio.  Ohio statutory law leans towards this result.

Under Ohio Rev. Code §306.31, "A regional transit authority may be created in the manner provided in section 306.32 of the Revised Code, for any one or more of the following purposes: . . . accepting assignment of and exercising a right to purchase a transit system in accordance with the acquisition terms of an existing franchise agreement.  A regional transit so created is a political subdivision of the state …."

Plaintiffs contend, "Ohio courts have held that employees of a regional transit authority are not public employees, except for the limited purpose of sharing

the benefits of the Public Employees Retirement Systems." (Doc. #31, PageID at 692). Plaintiffs argue, quoting *Spitaleri v. Metro RTA*, 67 Ohio App.2d 57, 61-62 (1980), "Here [GDRTA] is a regional transit authority created by O.R.C. §306.31, and thus is a 'hybrid entity which purposefully defies categorization.' Given that [GD]RTA's status as a 'public agency' under the FMLA is hybrid, the holding in *Spitaleri*, and that McEntarfer was acting directly or indirectly in the interest of [GDRTA] in the corporate sense, *Mitchell* does not provide the safe harbor that McEntarfer seeks." (Doc. #31, PageID at 692).

Plaintiffs' reliance on *Spitaleri* is misplaced. *Spitaleri* did not specifically address whether the GDRTA qualified as a political subdivision under Ohio Rev. Code §306.31 for all purposes. Instead, the analysis in *Spitaleri* began with the recognition that Metro, a Regional Transit Authority, "is a political subdivision of the state ([Ohio] R.C. 306.31) with broad 'government-like' powers and duties ([Ohio] R.C. 306.35(H), (I), (J), and (K))." 67 Ohio App.3d at 60. This did not resolve the issues in *Spitaleri*: whether certain employees of Metro were entitled statutory benefits (e.g., vacation leave or sick leave) available under Ohio statutory law to public employees of the State of Ohio.

In contrast, the issue in the present case concerns the meaning of "public agency" and "political subdivisions" under the FMLA, issues of federal law that

are distinct from the particular issues of Ohio law *Spitaleri* resolved.[1]  In other words, *Spitaleri* did not address the specific issue presented here:  whether GDRTA fits the definition of a "public agency" under the FMLA, 29 U.S.C. §§ 203(x), 2611(4)(A)(iii).  This federal-definitional issue presents a question of federal law.  *Cf. Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 270 (6th Cir. 1990)("Federal law governs the determination of whether an 'entity created under state law is a 'political subdivision' of the State, and therefore exempt from 'employer' status under the NLRA [National Labor Relations Act], 29 U.S.C. §185(a)." (quoting, in part, *National Labor Relations Board v. Natural Gas Utility Dist. of Hawkins Cnty., Tenn*., 402 U.S. 600, 603 (1971)).[2]

Few cases address whether a Regional Transit Authority or similar entity created under state law constitutes a "public agency" or a state "political subdivision" under the FMLA.  Instructive cases, such as *Natural Gas*, 402 U.S. at 603 and *Moir v. Greater Regional Transit Authority*, 895 F.2d 266, 271-72 (6th Cir. 1990) arise in the context of federal labor law.  The analysis in those cases of whether an entity is a "political subdivision" considers if the entity was "'(1)

---

[1]  The same FMLA-grounded conclusion applies to the other Ohio case upon which Plaintiffs rely.  *See Gehring v. Miami Valley Regional Transit Authority*, 1983 WL 4896 (Ohio Ct. App., 2nd Dist., 1983).

[2]  "Public employees of the political subdivisions of a state are not governed by the federal labor laws."  *N.A.A.C.P. v. Detroit Police Officers Assn.*, 821 F.2d 328, 332 (6th Cir. 1987).

created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" *Moir*, 895 F.2d at 271 (quoting *Natural Gas*, 402 U.S. at 604-05). GDRTA was created by the same Ohio statute as the Cleveland Regional Transit Authority in *Moir* as "a political subdivision of the state." *Moir*, 895 F.2d at 271 (quoting Ohio Rev. Code §306.31). This "weighs heavily in favor of finding" that GDRTA is a political subdivision under the FMLA. *See id.* In addition, like the Cleveland Regional Transit Authority in *Moir*, GDRTA is responsible to a board of trustees appointed by various county and municipal officials. *See* Ohio Rev. Code §306.33; *see also Moir*, 895 F.2d at 271-72. Consequently, GDRTA is a "political subdivision" and hence a "public agency" under the FMLA (29 U.S.C. §203(x)). *See Moir*, 895 F.2d at 271-72; *see also Broyles v. City of Dayton*, 1997 WL 1764763 at *10 n.11 (S.D. Ohio 1997) (Rice, D.J.) ("Defendant RTA is a regional transit authority created pursuant to O.R.C. §306.31, and is therefore a 'political subdivision of the state.'..."); *Kollstedt v. Princeton City Sch. Bd. of Educ.*, 2010 WL 597825 at *4 (S.D. Ohio Feb. 17, 2010)(Spiegel, D.J.) ("[T]he Sixth Circuit's decision in *Mitchell* is a reasoned one, grounded in statutory analysis and informed by views to the contrary in other circuits. This Court cannot simply ignore it on the basis that other circuits have engaged in the same process to reach the opposite result.").

Accordingly, the FMLA's individual liability provision does not apply to Defendant McEntarfer because she is an employee of a public agency, GDRTA. *See Mitchell*, 343 F.3d at 832; *see also Moir*, 895 F.2d at 271-72; *Broyles*, 1997 WL 1764763 at *10 n.11.

## V.     Motion For Leave To Amend Complaint

Plaintiffs have filed a Motion for Leave to File Second Amended Complaint (Doc. #51), to which Defendants have not specifically responded. Plaintiffs seek to amend their First Amended Complaint to (1) remove Plaintiff Rob Phillips and (2) raise claims of discriminatory discharge and retaliation concerning Plaintiffs Brian Gray and Rocquel Mitchell.

In the absence of a specific response by Defendants, and because leave to amend a complaint is freely granted as justice so requires, *see* Fed. R. Civ. P. 15(a), Plaintiffs' Motion for Leave to Amend is well taken.

### IT IS THEREFORE RECOMMENDED THAT:

1.     Defendants' Motion for Judgment on the Pleadings (Doc. #24) be **GRANTED**, in part, and Plaintiffs' FMLA claims against Defendant McEntarfer be **DISMISSED**;

2.     Defendants' Motion for Judgment on the Pleadings (Doc. #24) be otherwise **DENIED**; and

3.     Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. #51) be **GRANTED**, and Plaintiffs be directed to file their

Second Amended Complaint within ten days of an Order adopting this recommendation.

November 21, 2012

                                        s/ Sharon L. Ovington
                                        Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).