# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHELE WILKINSON, et al., | : | |
| Plaintiffs, | : | Case No. 3:11cv00247 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Chief Magistrate Judge Sharon L. Ovington |
| GREATER DAYTON REGIONAL TRANSIT AUTHORITY, et al., | : | |
| | : | |
| Defendants. | | |
| | : | |

## DECISION, ENTRY, AND ORDER

On August 14, 2012, the undersigned Judicial Officer issued a Protective Order resolving (temporarily) the parties' dispute over how "Protected Information" would be managed. A new dispute has since arisen over Paragraph 12 of the Protective Order, which provides:

> All documents containing Protected Information that are filed with or otherwise submitted to the Court shall either (a) have the Protected Information redacted from them or (b) file a Motion seeking a Court Order directing the Clerk of Court to place the Protected Information under seal. Protected Information contained in documents that are placed under seal shall not be disclosed except as provided in this Protective Order. All such Protected Information to be filed with or submitted to the Court shall be conspicuously marked "SUBJECT TO PROTECTIVE ORDER" and accompanied by a written Motion that the materials be placed under seal.

(Doc. #56, PageID at 1085-86).

Plaintiffs seek an Order modifying Paragraph 12 (Doc. #s 81, 85); Defendant Greater Dayton Regional Transit Authority (GDRTA) opposes Plaintiffs' proposed modification. (Doc. #82).

The problem: Plaintiffs argue that Paragraph 12 "precludes virtually every relevant document because much of the relevant information is ... 'Protected Information.' Hence, the redaction of 'Protected Information' from a document will leave nothing of substance for electronic filing." (Doc. #81, PageID at 1493). Plaintiffs further contend, "Documents filed under seal pose their own problems for the court, the parties, and the public – which has a right of access to judicial proceedings." *Id.*, PageID at 1494.

Plaintiffs' proposed solution: Assign a "substitute identifier" to each employee-class member.[1] All documents concerning an individual would have a unique "substitute identifier" – such as John Doe #1. Plaintiffs contend that once the personal-identifying information is redacted from John Doe #1's documents as required by the Protective Order, his identity and personal information would remain confidential. Plaintiffs emphasize, "Provided all information that might identify Mr. Doe is redacted from the document (e.g., address, telephone, DOB, etc.), there is absolutely no risk of disclosing *his* medical condition. Medical information presented in a vacuum in a class action cannot be tied to a particular individual with absolute certainty." (Doc. #81, PageID at 1494) (italics in original).

---

[1] Plaintiffs' first Motion for Class Certification sought to create six subclasses of Plaintiffs, totaling approximately 475 individuals. (Doc. #23, PageID at 327-28, 336). The Court recently denied that Motion without prejudice to renewal or amendment. (Doc. #85).

The Paragraph 12 problem Plaintiffs identify – i.e., it requires redaction of Protected Information thus leaving nothing of substance to file – is solved by option (b) in Paragraph 12. This option permits a party to file a motion seeking an Order directing the Clerk of Court to file under seal specific unredacted documents containing Protected Information. By doing this, Plaintiffs' (and GDRTA's) counsel will be able to cite to specific documents and specific pages, thus pointing the Court to the confidential and substantive information they want to rely on. This procedure will also help the parties advance their arguments in a meaningful manner and will assist the Court in gaining a more complete understanding of the alleged events and circumstances at issue at the class-certification stage.

In addition, Paragraph 12 as written protects the confidentiality interests of nonparties. As previously observed in this case, "[i]n this era, when identify theft and potential inroads to individual privacy loom large, protection of confidential financial and health information has become paramount." (Doc. #55, PageID at 1068). As to the public's right of access to open court proceedings, its interest is substantial but not absolute. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177-79 (6th Cir. 1983). "Courts have carved out several distinct but limited common law exceptions to the strong presumption in favor of openness." *Id*. at 1179. The exception applicable in the present case centers on "the content of information to be disclosed to the public." *Id*. Content-based exceptions protect not only the parties' right to a fair trial but also "the privacy rights of participants or third parties ...." *Id*. In the present case, the content of the protected information – confidential financial and health information – needs the protection provided

by Paragraph 12 as it is now written. In addition, Paragraph 12 provides some protection to the public's interest in access to court proceedings by not allowing the parties to file a document under seal without first obtaining leave of court. And a further degree of protection appears in Fed. R. Civ. P. 26(c) because it "allows sealing of court papers only 'for good cause shown' to the Court that the particular documents justify court-imposed secrecy."[2] *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

Plaintiffs downplay the risk of revelation posed by their proposed procedure. Assigning a "substitute identifier" to an individual (or, for that matter, redacting a name entirely) would not eliminate the possibility that GDRTA's employees could learn – perhaps easily learn – about one employee's confidential health and financial information that other employees simply have no business knowing. GDRTA is correct that even if a specific employee's name is redacted from an unsealed document and replaced with a substitute identifier, his or her coworkers may recognize the employee's medical documentation based on general conversations about the employee's health or medical situation. GDRTA cogently explains, "GDRTA is not a massive employer with thousands of employees who know nothing about their coworkers. Most of the GDRTA's employees know each other, and many of them are socially acquainted outside of work. This could allow employees' coworkers to recognize their medical documentation based on health condition identified in the documents, and learn sensitive or embarrassing information about their medical

---

[2] The current version of Rule 26(c) differs stylistically, but not substantively, from the version quoted in *Bankers Trust*. Current Rule 26(c) states, in part, "The court may, for good cause, issue an order to protect a party or person ...."

symptoms, other conditions, prognosis, and treatment schedule." (Doc. #82, PageID at 1529-30). GDRTA, moreover, has a strong interest in maintaining the privacy of confidential financial and health information in an effort to eliminate potential workplace negatives such as rumor, gossip, and stigmatization.

It is apparent, moreover, that many individuals hold a strong privacy interest in maintaining the privacy of particular health problems. For instance, someone who suffers from a condition with an unfair and unfortunate history of isolation or stigmatization or who suffers from a serious yet presently asymptomatic condition might reasonably want their medical information to remain private.[3] And it is all too easy to think of chronic yet treatable health conditions that a person would want to keep private simply because he or she prefers the solace of privacy and family support to cope with their condition. Plaintiffs' proposed modification of Paragraph 12 simply carries too much risk that what is confidential will not remain confidential.

Plaintiffs' Reply looks to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its supporting Regulations for support and guidance. Plaintiffs

---

[3] In another context, Congress has recognized the unfortunate history of discrimination faced by individuals with disabilities, noting (in 1990):

> (1) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;
>
> (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[.]

42 U.S.C. §12101(a).

acknowledge that the parties in this case are not subject to HIPAA.  They point out, however, that HIPAA Regulations permit covered entities to disclose Protected Health Information "'in the course of any judicial or administrative proceeding.'"  (Doc. #84, PageID at 1568) (quoting 45 C.F.R. §164.512(e)(1)).  Plaintiffs contend that their proposed modification to Paragraph 12 is precisely what HIPAA Regulations would require:  (1) the Protected Health Information "has been 'de-identified'; and (2) there is no 'actual knowledge' that the [I]nformation could be used to identify an individual who is the subject of the [I]nformation."  (Doc. #84, PageID at 1570) (quoting, in part, 45 C.F.R. §164.514).

  Plaintiffs are correct to the extent they assert that a substitute identifier, like John Doe #1, would "de-identify" the person whose medical records are revealed.  But Plaintiffs downplay the very real risk that the substitute identifier would only de-identify the person in the short term.  A GDRTA employee reading a de-identified individual's unredacted health or financial information might quickly match the substitute identifier with the actual person it concerns.  Because of this, Plaintiffs' proposed modification carries too much risk of infringing non-party employees' strong interest in keeping private their confidential personal health and financial information.

  Lastly, Paragraph 12 will not unduly infringe upon the public's right of access because the ultimate merits of Plaintiffs' claims will not be resolved at the class-certification stage.  When resolving a motion for class certification, the court does "not inquire into the merits of the underlying claims.  A court must accept as true the allegations in the complaint, while keeping in mind that resolution of the certification issue may require the court 'to

6

probe behind the pleadings.'" *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 476 (S.D. Ohio 2004) (footnote omitted) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140 (1974) (other citation omitted)); *see General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982)("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). This boundary marker points toward the procedural reality that documents sealed in connection with class-certification issues might well be unsealed at a later stage due to future developments in the case – such as an individual's decision to waive his or her right to privacy in their documents. Because of this possibility, Paragraph 12 as written does not forever foreclose the public from having an opportunity to access at least some documents that are sealed at the class-certification stage.

Accordingly, Plaintiffs' Motion To Modify Protective Order lacks merit.

## IT IS THEREFORE ORDERED THAT:

Plaintiffs' Motion To Modify Protective Order (Doc. #81) is DENIED.


April 8, 2013

                                          s/Sharon L. Ovington
                                            Sharon L. Ovington
                                Chief United States Magistrate Judge