IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELE WILKINSON, *et al.*,　　　　　:

*On behalf of themselves and*
*others similarly situated*,

　　　　　Plaintiffs,　　　　　　:　　Case No. 3:11-cv-247

　　　v.　　　　　　　　　　　　　JUDGE WALTER H. RICE

GREATER DAYTON REGIONAL　　　:
TRANSIT AUTHORITY,

　　　　　Defendant.

---

DECISION AND ENTRY OVERRULING PLAINTIFFS MICHELE
WILKINSON, DELLA AYDELOTT, SHALONDA EGLER AND DOUG
STAUTER'S THIRD AMENDED MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS COUNSEL (DOC. #190); NAMED
PLAINTIFFS AND DEFENDANT GREATER DAYTON REGIONAL
TRANSIT AUTHORITY SHALL FILE A MODIFIED SCHEDULING
ORDER AS TO THE INDIVIDUAL CLAIMS OF THE NAMED PLAINTIFFS
WITHIN TWENTY-ONE DAYS OF THIS ENTRY; SCHEDULING
CONFERENCE CALL SET FOR SEPTEMBER 14, 2017, AT 10:00 A.M.

---

Plaintiffs Michele Wilkinson, Della Aydelott, Shalonda Egler and Doug Stauter

(collectively "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and other

similarly situated employees, filed suit against Greater Dayton Regional Transit

Authority ("GDRTA" or "Defendant"), alleging violations of the Family and Medical Leave

Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* They seek declaratory and injunctive

relief, along with compensatory and liquidated damages. Before the Court is Plaintiffs'

Third Amended Motion for Class Certification and Appointment of Class Counsel

("Motion"). Doc. #190. Counsel have waived the opportunity for oral argument. For the reasons set forth below, the Court OVERRULES Plaintiffs' Motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The FMLA was enacted to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and to "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1-2). Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period  . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). Employers may require FMLA leave requests to be supported by sufficient medical certification from a health care provider, and may require subsequent recertifications on a reasonable basis. 29 U.S.C. § 2613(a-b, e).

The Sixth Circuit has recognized two theories of recovery under the FMLA. An "entitlement" or "interference" claim arises under 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." A "retaliation" or "discrimination" claim arises under 29 U.S.C. § 2615(a)(2), which prohibits employers from discharging, or otherwise discriminating against, individuals who oppose unlawful FMLA practices. *Hoge v. Honda of Am. Mfg., Inc.,* 384 F.3d 238, 244 (6th Cir. 2004). Claims for violations of the FMLA must be asserted within two years after the date of the alleged violation. However, the statute of limitations is extended to three years if an

employee can prove that employer's violation of the statute was willful. *See* 29 U.S.C. § 2617(c)(1-2).

In their Second Amended Complaint in Class Action, their last complaint ("Second Amended Complaint"), Doc. #79, Plaintiffs allege that GDRTA, in response to what it perceived as "rampant absenteeism" among its employees, implemented more stringent policies regarding appropriate verification for use of sick leave and FMLA leave. *Id.*, ¶ 133, PAGEID #1382. GDRTA enacted a new Absence Control Policy in January of 2008, and revised its FMLA policy in March of 2009. Enforcement of these policies (collectively the "Uniform Policies") achieved the desired effect; there was a marked drop in absenteeism. Doc. #190, PAGEID #5961-63 (citations omitted).

Plaintiffs claim that the Uniform Policies' requirements are more onerous than what is allowed under the FMLA and its regulations, and are designed to discourage employees from taking lawful, protected FMLA leave. More specifically, Plaintiffs allege that GDRTA wrongfully:

(1)    Requires employees to be absent before allowing them to apply for FMLA leave;

(2)    Requires employees to complete a Request for FMLA leave form before allowing them to obtain a medical certification form;

(3)    Routinely finds medical certifications to be "incomplete" or "insufficient";

(4)    Refuses to accept foreseeable leave notifications, instead requiring employees to take a chargeable absence until eligibility for FMLA leave is established;

(5)    Requires employees to recertify intermittent FMLA leave within the twelve-month period;

(6)    Requires employees to obtain second and third medical opinions, when there is no reason to doubt the validity of the medical certification presented;

(7)    Contacts employees' health care providers for improper purposes;

(8)    Sends employees to doctors whose services GDRTA regularly uses for second opinions;

(9)     Refuses to pay for reasonable out-of-pocket expenses incurred in
        obtaining second and third opinions; and

(10)    Improperly accounts for FMLA absences.

Doc. #79, ¶ 133, PAGEID #1382.  Plaintiffs further allege that GDRTA retaliates against

employees who attempt to exercise their rights under the FMLA, by subjecting them to

discipline, suspension, and termination, and by harassing and intimidating them. *Id.*,

¶ 134, PAGEID #1382-83.

        On January 21, 2016, the Named Plaintiffs filed the instant Motion.  Doc. #190.

Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiffs move that the Court

certify the following class:

> [C]urrent and former employees of Defendant who were "eligible" within
> the meaning of 29 U.S.C. §2611(2)(A), and who applied for, and were
> denied, disciplined, terminated or otherwise had their rights under the
> FMLA interfered with or who were retaliated against for their exercise of
> rights under the FMLA.

Doc. #190, PAGEID #5966.

        Plaintiffs also move that the Court certify the following five subclasses:

> Subclass 1: All current and former employees of Defendant who
> were "eligible" within the meaning of 29 U.S.C. § 2611(2)(A)
> during the applicable limitations period, whose medical
> certifications were found insufficient and whose rights under the
> FMLA were denied and/or restrained.

> Subclass 2: All current and former employees of Defendant who
> were "eligible" within the meaning of 29 U.S.C. § 2611(2)(A)
> during the applicable limitations period, and were terminated,
> disciplined, or otherwise suffered adverse employment actions
> based upon discipline and/or termination under Defendant's
> absenteeism policy where the exercise of rights under the FMLA
> was interfered with or denied.

> Subclass 3: All current and former employees of Defendant who
> were "eligible" within the meaning of 29 U.S.C. § 2611(2)(A)
> during the applicable limitations period, and were required to
> obtain re-certification for intermittent FMLA leave within the
> twelve month period where the healthcare provider set forth a

4

minimum period of time in the original medical certification and the condition forming the basis of FMLA leave [had] not changed.

Subclass 4: All current and former employees of Defendant who were "eligible" within the meaning of 29 U.S.C. § 2611(2)(A) during the applicable limitations period, and were required to obtain a second and/or third opinion without a reason to doubt the validity of the medical certification; were not previously approved for leave pending the second opinion process; had second or third opinions performed by healthcare providers regularly used by Defendant; or were not provided a copy of these opinions within two business days, and whose medical leave was denied and/or restrained by Defendant.

Subclass 5: All current and former employees of Defendant who were "eligible" within the meaning of 29 U.S.C. § 2611(2)(A) during the applicable limitations period, whose rights under the FMLA were denied and/or restrained by Defendant because Defendant would not accept their notification of a foreseeable medical leave of absence.

Doc. #190, PAGEID #5966-67.

Plaintiffs seek a combination of money damages and equitable (declaratory and injunctive) relief. They ask the Court to order GDRTA to:

(A)    Issue notice to all similarly situated employees whose FMLA rights have been violated informing them of their rights under this action;
(B)    Make whole any adversely affected employees for any time lost as a result of being denied FMLA leave;
(C)    Order the reinstatement of any adversely affected employees who have lost their employment at GDRTA as a result of GDRTA's wrongful actions under the FMLA;
(D)    Remove all references to any disciplinary action for any absences which should have otherwise been designated as FMLA absences;
(E)    Change its practices and policies that interfere with employees' FMLA rights so that the practices and policies comply with the law;
(F)    Pay liquidated damages pursuant to the FMLA;
(G)    Pay prejudgment interest;
(H)    Pay costs, including but not limited to reasonable expert witness fees, and reasonable attorneys' fees and the interest incurred thereon.
(I)    Find that the Defendant's actions were willful, and thus extend the statute of limitations period to three years prior to the filing of the original complaint; [and]

     (J)     Enter an order permanently enjoining and restraining GDRTA from violating the provisions of FMLA[.]

Doc. #79, PAGEID #1383-84.

GDRTA maintains that class certification is inappropriate for a wide variety of reasons, including the named Plaintiffs' lack of standing to pursue injunctive relief, flawed class and sub-class definitions, and failure to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(2). Doc. #195, PAGEID #6197-6231.

## II.    STANDING AND MOOTNESS

While all Named Plaintiffs were GDRTA employees within the applicable limitations period, 29 U.S.C. § 2617(c)(1-2), none is currently employed by GDRTA. Doc. #195-4, PAGEID #6540; Doc. #195-5, PAGEID #6577-78; Doc. #196-1, PAGEID #6697-98; Doc. #196-3, PAGEID #6724. GDRTA argues that, as former employees, the Named Plaintiffs lack standing under Article III of the United States Constitution to pursue prospective injunctive relief on behalf of the class. Doc. #195, PAGEID #6199. In order to satisfy the "case or controversy" requirement of Article III, a plaintiff must prove: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) that the requested relief will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citing U.S. Const. art. III, § 1).

Former employees generally lack standing to pursue injunctive relief on behalf of a Rule 23(b)(2) class, because they face no realistic threat that they will again be subject to the allegedly unlawful employment policies. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364-65, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). GDRTA argues that,

because a justiciable case or controversy must exist <u>throughout</u> the litigation, not only when the complaint is filed, any standing that the Named Plaintiffs may have had to seek injunctive relief at the time the original complaint was filed has dissipated. Doc. #195, PAGEID #6198 (citing *Campbell-Ewald Co. v. Gomez*, --- U.S. ----, 136 S. Ct. 663, 669, 193 L.Ed.2d 571 (2016), *as revised* (Feb. 9, 2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91, 133 S. Ct. 721, 184 L.Ed.2d 553 (2013); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). Plaintiffs argue that, in the Sixth Circuit, "[s]tanding is to be determined as of the time the complaint is filed.'" *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001)). Plaintiffs argue that, because Wilkinson, Aydelott and Egler were still employed by GDRTA at the time the Second Amended Complaint was filed, Doc. #79, ¶¶ 9-11, PAGEID #1368, they have standing to represent a class seeking injunctive relief. Doc. #196, PAGEID #6652. GDRTA notes that *Cleveland Branch* was decided more than a decade prior to the Supreme Court's holding in *Already* that standing must exist "through 'all stages' of the litigation." Doc. #195, PAGEID #6199 n.8 (quoting *Already*, 568 U.S. at 91)). Thus, they argue that *Cleveland Branch* is no longer good law, and the Named Plaintiffs' inability to establish standing at the time of filing the instant Motion is still fatal to their class claims. *Id.*, PAGEID #6199-6200.

Plaintiffs claim that GDRTA's argument regarding standing is more appropriately characterized as an argument that the Named Plaintiffs' claims for injunctive and declaratory relief are moot. Doc. #196, PAGEID #6654-55. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491

(1969). Unlike standing, which the Plaintiffs have the burden of proving at every stage of litigation, GDRTA has the "heavy burden" of showing that the Named Plaintiffs' claims are moot. *Cleveland Branch, NAACP*, 236 F.3d at 531 (citing *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).

"Generally, when the named plaintiff's claims become moot before a class has been certified, the whole action is moot and must be dismissed. In that situation, courts reason that the unnamed class members are technically not present in the action, so there is no one to assert a justiciable claim against a defendant." 15 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, §101.94[4][b][i]. The Sixth Circuit, following MOORE'S logic, has held that when "the named plaintiff's claim becomes moot <u>before</u> certification, dismissal of the action is required." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (emphasis added) (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (*per curiam*); *Lusadri v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992)).

Plaintiffs argue, however, that the instant case falls under one of the "special mootness rules [that] exist for class actions," Doc. #196, PAGEID #6654-55 (quoting *Brunet*, 1 F.3d at 399), and thus, even if they personally no longer have viable claims for injunctive or declaratory relief, they should still be able to represent the putative class and subclasses. *Id.*, PAGEID #6656. However, even assuming *arguendo* that such rules still exist as good law after *Already* and *Campbell-Ewald*, the instant case fails to meet any class-action mootness exception. Plaintiffs' claims are not "inherently transitory;" *i.e.*, they do not by their nature become stale in such a short amount of time that no plaintiff could seek meaningful judicial review. *R.I. L-R v. Johnson*, 80 F. Supp.

3d 164, 183 (D.D.C. 2015). Nor are they similar to a pretrial detainee who claims that his Constitutional rights were violated. That "individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures[;]" such a "claim, in short, is one that is distinctly capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 110, 95 S.Ct. 854, 43 L.Ed.2d 54 n.11 (1975) (internal quotation marks and citation omitted). Moreover, while there is an exception to the mootness principle when the defendant voluntarily ceases the challenged conduct solely in order to moot the claims, *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981-82 (6th Cir. 2012), there is no evidence of record that GDRTA has altered its Uniform Policies.

Further, Plaintiffs argue that their ongoing substantive claims "for incidental monetary relief[,]" Doc. #196, PAGEID #6656 n.6 (citation omitted), enable them to represent the class and subclasses, and that even if those claims were moot, they could still serve as representatives because they maintain "a procedural claim based on the representatives' interest in representing the class." *Id*. (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402, 100 S.Ct. 1202, 63 L.Ed.2d 479). Plaintiffs cite to no caselaw in support of their first argument, and indeed, such an argument would run contrary to the requirement that their claims be typical of the claims of the class members. FED. R. CIV. P. 23(a)(3). Plaintiffs' second argument is no more persuasive. In *Geraghty*, the Supreme Court held that "in determining whether the plaintiff may continue to press the class certification claim, after the claim on the merits 'expires,' we must look to the nature of the 'personal stake' in the class certification claim." 445 U.S. at 402. As former GDRTA employees, any decision by this Court as to whether GDRTA

should be enjoined from continuing its Uniform Policies would not affect the Named Plaintiffs. Therefore, they do not have a "personal stake" in the relief sought by the putative class and subclasses.

Finally, Plaintiffs argue that, even if their individual claims for injunctive relief are moot, the Court should nevertheless certify the class to diffuse GDRTA's "systematic strategy of 'picking off' the [N]amed Plaintiffs in order to unilaterally moot their claims[,]" Doc. #196, PAGEID #6656, by entering into confidential settlement agreements with them, terminating their employment or coercing their resignations. *Id.* Plaintiffs argue that refusing to certify the class and subclasses would have the effect of ratifying GDRTA's supposedly underhanded tactics, and note that at least one District Court within the Sixth Circuit has allowed individuals to remain as class representatives even after their individual claims were mooted. *Id.*, PAGEID #6655, 6657-58 (citing *Dozier v. Haveman*, No. 2:14-CV-12455, 2014 WL 5483008 (E.D. Mich. Oct. 29, 2014)).

In *Dozier*, the named plaintiffs brought a class action suit against the State of Michigan ("the State") for allegedly winding down its Medicaid program dedicated to family planning services ("Plan 1") prior to determining whether they were eligible for the broader Medicaid plan (which included family planning services) that would be subsequently implemented by the State ("Plan 2"). 2014 WL 5483008, at *1. While the suit was pending, and Plan 1 had not yet been terminated, the State enrolled the named plaintiffs in Plan 2. *Id.* In so doing, the State afforded the named plaintiffs the relief they sought (continued access to family planning services), and thus, the State claimed, they could not serve as named representatives, and the proposed class could not be certified. *Id.* However, because the State "unilaterally mooted [the named plaintiffs']

10

claims after they moved for class certification, that others have (twice) attempted to intervene as class representatives only to have their claims mooted, and the high likelihood that still others are willing to serve as representatives, the Court concludes that Plaintiffs' class-action claims remain viable." *Id.*, at *6. Plaintiffs argue that the *Dozier* logic should prevail in this case, as GDRTA allegedly reached resignation settlement agreements with, or in some cases, involuntarily terminated, several union members, including former Named Plaintiff Della Aydelott, so as to moot their respective claims. Doc. #196, PAGEID #6670-71. Further, Plaintiffs claim that, given the size of the putative class (333 members), there are plenty of Class members who can replace the Named Plaintiffs "so [as] to permit this case to proceed on the merits." *Id.*, PAGEID #6658.

Even setting aside the fact that *Dozier* is an unpublished decision from outside the Southern District of Ohio, recent Supreme Court jurisprudence leads this Court to doubt that its holding is applicable. In *Town of Chester, N.Y. v. Laroe Estates, Inc.*, the Supreme Court held every plaintiff—even one purporting to intervene by right—must satisfy the "case or controversy" requirement for standing if she seeks relief distinct from that of the original plaintiff, even if it is undisputed that the original plaintiff meets the standing requirement. --- U.S. ----, 137 S.Ct. 1645, 1650-51, 198 L.Ed.2d 64 (2017). In so holding, the Supreme Court emphasized that its "standing decisions make clear that standing is not dispensed in gross. To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press <u>and for each form of relief that is sought</u>." *Id.* at 1650 (emphasis added) (internal quotation marks and citations omitted).

*Town of Chester* was not a class action lawsuit, and, thus, did not touch on Rule 23. Nonetheless, the Supreme Court's reasoning is instructive in the class-action context[1], and reinforces the Court's conclusion that the Named Plaintiffs, as former employees who cannot be injured by GDRTA's alleged continuing violations of the FMLA, lack standing to seek injunctive relief on behalf of the putative class members. Moreover, the fact that the Named Plaintiffs are no longer GDRTA employees means that any declaration by this Court that GDRTA had violated the FMLA would not benefit these Named Plaintiffs prospectively. *See, e.g.*, *Forest Guardians v. Johanns*, 450 F.3d 455, 462 (9th Cir. 2006) (when "both injunctive and declaratory relief are sought but the request for an injunction is rendered moot during litigation," claim for declaratory relief is also moot unless "a declaratory judgment would nevertheless provide effective relief[.]"). Moreover, the Named Plaintiffs' remaining sought-after remedies—money damages and otherwise being made whole by GDRTA, Doc. #79, PAGEID #1383—are distinct in nature from the prospective injunctive relief sought on behalf of the putative class.

In sum, whether the applicable standard is standing or mootness, the Named Plaintiffs may not seek or obtain prospective injunctive or declaratory relief Consequently, the Named Plaintiffs may not serve as representatives for either the overall class or any of the subclasses, all of which seek such relief. However, <u>their</u> claims for money damages and other relief are not moot, and this Court, in the interest of justice, could grant leave to substitute current GDRTA employees as named plaintiffs for the class and subclasses. Accordingly, the Court will examine whether the putative class and subclasses meet the requirements of Rule 23.

---

[1] *See, e.g.*, Jonah Knobler, "Town of Chester: An Answer on Class-Member Standing?", LAW360.COM (Jun. 6, 2017, 4:45 PM), https://www.law360.com/articles/9317817.

## III.   LEGAL STANDARDS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Dukes*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 95 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). The party seeking class certification bears the burden of proving that certification is warranted. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

Class actions are governed by Federal Rule of Civil Procedure 23. The Rule 23 analysis is a two-step process. <u>First</u>, the party seeking certification must satisfy all four subparts of the following subsection:

> (a) **Prerequisites**. One or more members of a class may sue or be sued
> as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is
> impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of
> the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

FED. R. CIV. P. 23(a). In addition to meeting each of these four prerequisites, the party seeking class certification must satisfy the requirements of one of the subparts of subsection (b) of Rule 23. Here, Plaintiffs seek certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" FED. R. CIV. P. 23(b)(2).

While the party seeking certification need not show a likelihood of prevailing on the merits, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule[.]" *Dukes,* 564

U.S. at 350. "Meeting the requirements of Rule 23(a) requires something more than mere repetition of the rule's language; there must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Young*, 693 F.3d at 537 (internal quotation marks and citation omitted). "Important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a [C]ourt's ability to ascertain its membership in some objective manner." *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 287 (S.D. Ohio 2006)).

The above-described class certification burden applies for each subclass as well. "Plaintiffs must come forward with the exact definition of each subclass, its representatives, and the reasons each subclass meets the prerequisites of Rule 23(a) and (b)." *In re Telectronics Pacing Sys., Inc.,* 168 F.R.D. 203, 221 (S.D. Ohio 1996).


IV.    **ANALYSIS**

   A.    **Impossibility of the Class and Subclasses 1, 2, 4 and 5**

   GDRTA argues that, for several reasons, the class and subclasses are not readily ascertainable, and thus, cannot be certified. First, they note that, only 106 members of the putative class are also members of one or more of the five subclasses. Doc. #195, PAGEID #6202-03 (citing Doc. #190, PAGEID #5960, 5964-65; Doc. #190-8; Doc. #195-7, PAGEID #6622-28). GDRTA claims that the above fact "proves that GDRTA did not 'uniformly' apply any policies that violated the FMLA[,]" and that class certification should be denied for that reason alone. *Id.*, PAGEID #6203 However, in *Cole v. City of Memphis*, the U.S. Court of Appeals for the Sixth Circuit held that "ascertainability is inappropriate in the (b)(2) context," when the "(b)(2) class [is] seeking

14

only injunctive and declaratory relief."  839 F.3d 530, 542 (6th Cir. 2016) (citation omitted).  As the class-wide relief sought by the Named Plaintiffs is solely declaratory and injunctive in nature, and notice need not go out to class members, the ascertainability of the membership in the class and its subclasses is not relevant for this Court's decision on certification.

However, these Plaintiffs' proposed class definition, of current and former GDRTA employees who "had their rights under the FMLA interfered with or who were retaliated against for their exercise of rights under the FMLA[,]" Doc. #190, PAGEID #5966, renders class certification impossible.  "Interference" and "retaliation" are legal standards for FMLA violation, which an employee may generally only prove through specific facts.  For example, Plaintiffs allege that GDRTA's policy for what is necessary for "complete and sufficient" certification are more stringent than what is permissible under the FMLA and its regulations.  Doc. #79, ¶ 67, PAGEID #1374.  Assuming *arguendo* that Plaintiffs' allegation is true, then GDRTA's policy would only constitute an interference with FMLA rights <u>if</u> a GDRTA employee sought FMLA leave, was told by GDRTA that she needed to provide additional information to complete the certification, <u>and</u> that someone in her situation would not have been required to do so if GDRTA's requirements complied with the FMLA and its regulations.  Thus, even if GDRTA's allegedly unlawful certification policy is applied uniformly to all employees, a determination of interference depends upon the specific circumstances of an individual FMLA applicant.

In other words, Plaintiffs' proposed class is an impermissible "'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits."  *Young*,

693 F.3d at 538; *see also Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir.2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment[.]'" *Id.*. The ability of one or more putative class members to avoid an adverse judgment simply by the Named Plaintiffs losing the case on the merits means that the proposed class "would fail to provide the final resolution of the claims of <u>all</u> class members that is envisioned in class action litigation." *Id.* (emphasis in original). Thus, the overall putative class, as defined, is impermissible and will not be certified.

Four of the putative subclasses suffer from similar flaws. <u>Subclass 1</u> contains "[a]ll current and former employees . . . whose rights under the FMLA were denied or restrained[,]" Doc. #190 PAGEID #5966, and <u>Subclass 2</u> contains "[a]ll current and former employees. . . [who] were terminated, disciplined, or otherwise suffered adverse employment actions based upon discipline and/or termination under Defendant's absenteeism policy where the exercise of rights under the FMLA was interfered with or denied." *Id.*, PAGEID #5966-67. <u>Subclass 4</u> contains "[a]ll current and former employees. . . whose medical leave was denied and/or <u>restrained</u> by Defendant[,]" *id.*, PAGEID #5967 (emphasis added), and <u>Subclass 5</u> includes "[a]ll current and former employees of Defendant . . . whose medical leave was denied and/or restrained by Defendant because Defendant would not accept their notification of a foreseeable medical leave of absence." *Id.* (emphasis added). These four subclasses are thus defined by legal conclusions—denial and restraint of FMLA rights—which can only be resolved by adjudications on the merits, *i.e.*, whether the putative class members' FMLA

16

rights were actually restrained or violated by GDRTA. Accordingly, those subclasses are impermissible failsafe classes, and will not be certified.

Subclass 3, however, covers those current and former employees who "were required to obtain re-certification for intermittent FMLA leave within the twelve month period where the healthcare provider set forth a minimum period of time in the original medical certification and the condition forming the basis of FMLA leave has not changed." Doc. #190, PAGEID #5967. Members of this class qualify if they meet the factual criteria contained therein, regardless of whether GDRTA's alleged conduct actually violated the FMLA. Thus, Subclass 3 may proceed to the next stage of the Court's analysis—whether the class satisfies the requirements of Rule 23(a).

## B. Subclass 3 Cannot Satisfy Rule 23(a) Requirements

Before a class or subclass may be certified, it must satisfy each of the requirements in Rule 23(a). First, the number of people covered by the putative class must be so large that joinder is impractical ("numerosity"). FED. R. CIV. P. 23(a)(1). Second, common questions of law or fact must predominate across all putative class members ("commonality"). Id. at 23(a)(2). Third, the claims of the Named Plaintiffs must be typical of the putative class members' claims ("typicality"). Id. at 23(a)(3). Fourth, the Court must be satisfied that both the Named Plaintiffs and their counsel will vigorously prosecute the claims on behalf of all class members ("adequacy"). Id. at 23(a)(4). For the reasons set forth below, Plaintiffs' putative Subclass 3 cannot satisfy Rule 23(a).

### 1. Numerosity

In their discovery responses, Plaintiffs identify forty-seven members of Subclass 3. Doc. #196, PAGEID #6667 (citing Doc. #190-7, 196-7, 196-8). While "it is generally accepted that a class of 40 or more members is sufficient to meet the numerosity requirement[,]" *Krieger v. Gast*, 197 F.R.D. 310, 314 (W.D. Mich. 2000), GDRTA argues that the fact that all or almost all of the putative class members live in the Dayton, Ohio, Metropolitan Statistical Area ("MSA"), makes joinder of the putative subclass members feasible. Doc. #195, PAGEID #6225-26 (citing *Rumpke v. Rumpke Container Serv., Inc.*, 205 F.R.D. 204, 208 (S.D. Ohio 2001) (Spiegel, J.); *Bourdais v. City of New Orleans*, No. Civ.A. 99-1434, 1999 WL 729249, at *3 (E.D. La. Sept. 15, 1999)).

The Court is not persuaded by GDRTA's argument, as both cases it cites are distinguishable. In *Rumpke*, the Court held that plaintiffs could not establish that common issues predominated across the putative class of nearly 800 drivers, and the number of remaining putative class members was far fewer than forty. Therefore, the fact that the remaining putative class members were all domiciled in the Columbus, Ohio, MSA, was ancillary to the Court's conclusion that there were not so many remaining members that joinder was impractical. 205 F.R.D. at 208-09. In *Bourdais*, an unpublished case from outside the Sixth Circuit, the Court held that joinder was practical for a putative class of fewer than fifty members, all of whom lived within the City of New Orleans and had the same employer. 1999 WL 729249, at *3. Thus, the Court concluded, the addresses of putative class members were "either presently known or easily discoverable." *Id*. The instant lawsuit has been pending for more than six years, during which time many of the members may have left their employment with GDRTA or

changed addresses. Thus, the Court may not reasonably conclude that the addresses of the putative Subclass 3 members are known or easily discoverable.

In sum, Plaintiffs have shown that joinder of the putative subclass members is impractical, and have satisfied the numerosity requirement of Rule 23(a)(1).

### 2. Commonality

Plaintiffs argue that the overarching legal question—whether GDRTA violated the FMLA by requiring employees eligible for intermittent leave to obtain recertification of their eligibility when doing so was not required by the FMLA—must be answered in an identical manner for putative class member, and will resolve the claims of all Subclass 3 members in one fell swoop. They claim that this common legal question—and, more importantly, its common answer—predominates over any factual differences among class members, and thus, they have satisfied their commonality burden under Rule 23(a)(2). Doc. #190, PAGEID #5971-72 (citing *Wal-Mart*, 564 U.S. at 349-50; *Davis v. Cintas Corp.*, 717 F. 3d 476, 487 (6th Cir. 2013); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). Specifically, Plaintiffs claim that GDRTA's application of its requirements for recertification, which were more stringent than what is permissible under FMLA—and not the effect of those applications upon Subclass 3 members—is the central issue, which predominates over the putative subclass members. Doc. #196, PAGEID #6683 (citing *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909 (7th Cir. 2012), *cert. granted*, *judgement vacated at* 133 S.Ct. 1722 (Mem.), 185 L.Ed.2d 782 (2013)).

In its memorandum *contra*, GDRTA notes that the governing FMLA regulation allows it to ask for recertification for intermittent leave as often as every thirty days,

19

unless the initial certification specified a longer time, and that it may ask for re-certification sooner than thirty days under certain circumstances. Doc. #195, PAGEID #6184 (citing 29 C.F.R. § 825.308). Thus, GDRTA's default policy being challenged, which requires recertification every twelve months, Doc. #190, PAGEID #5966-67, is facially compliant with the FMLA. Accordingly, GDRTA argues, any determination as to whether the policy violated the FMLA depends on the individual circumstances of each applicant. Doc. #195, PAGEID #6211-12, and that because Plaintiffs cannot satisfy the commonality requirement for Subclass 3, the subclass cannot be certified. *Id.*, PAGEID #6215.

The plain language of the proposed Subclass 3 and the governing FMLA regulation compel the Court to conclude that common issues do not predominate over putative members of Subclass 3. The proposed subclass includes those employees who "were required to obtain re-certification for intermittent FMLA leave within the twelve month period of time where the healthcare provider set forth a minimum period of time in the original medical certification." Doc. #190, PAGEID #5967. As discussed above, FMLA regulations permit an employer to require re-certification every thirty days unless the initial certification was for a longer duration. 29 C.F.R. § 825.308(a-b). Thus, even if GDRTA required recertification for all forty-seven putative subclass members during a twelve-month period, those actions by themselves would not constitute violations of the FMLA. Only by examining all of the pertinent facts and circumstances involved in the individual plaintiff's situation can the Court determine whether a violation of the FMLA occurred.

Further, as each putative subclass member has a different medical condition, the duration of the initial certification would necessarily be individualized. For example, if GDRTA required all subclass members to be recertified every thirty days, then such a requirement would be an FMLA violation as to Employee A, who had an initial certification period of forty-five days, but would not violate the FMLA as to Employee B, whose initial certification period was only twenty-one days. Therefore, and contrary to Plaintiffs' argument, neither a common question nor a common answer predominates over Subclass 3, such that resolution of whether Wilkinson's FMLA rights were violated through GDRTA's recertification requirement would necessarily resolve the claims of putative subclass members.

The second portion of Plaintiffs' Subclass 3 definition, those employees for whom "the condition forming the basis of FMLA leave has not changed[,]" Doc. #190, PAGEID #5967, also prevents Plaintiffs from satisfying the commonality requirement. Whether "[c]ircumstances described by the previous certification have changed significantly[,]" 29 C.F.R. § 825.308(c)(2), is one of the reasons an employer may legally request recertification prior to the expiration of the original certification period. However, an employer may also legally request an early recertification if "[t]he employee requests an extension of leave[,]" 29 C.F.R. § 825.308(c)(1), or if "[t]he employer receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification." 29 C.F.R. § 825.308(c)(3).

The interplay of the subparts of 29 C.F.R. § 825.308(c) demonstrates how individualized questions and answers predominate among putative subclass members. For example, a trier of fact could find that Wilkinson never requested an extension of

leave and that GDRTA never doubted her stated reason for absence, and could conclude that GDRTA's premature recertification policy violated her FMLA rights. However, those findings and conclusion would not compel that trier of fact to conclude GDRTA violated the FMLA as to a putative subclass member who did request an extension of leave, or for whom GDRTA received information that caused it to doubt the validity of the original certification. As no common answer predominates over the subclass members, Plaintiffs have not satisfied Rule 23(a)(2). Thus, Subclass 3 may not be certified, and the Court need not evaluate whether Plaintiffs have met the requirements of Rule 23(a)(3), (a)(4) and (b)(2).

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, Doc. #190, is OVERRULED. The Named Plaintiffs and GDRTA shall file an amended scheduling order within twenty-one days of this order as to the Named Plaintiffs' individual claims.

A telephonic scheduling conference shall take place on Thursday, September 14, 2017, at 10:00 a.m.

Date: August 17, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE